[No. B200408. Second Dist., Div. Three. July 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS SIZEMORE, JR., Defendant and Appellant.

866

COUNSEL

Fay Arfa for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Xiomara Costello, Michael R. Johnsen and Stephanie C. Brenan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Thomas Sizemore, Jr., appeals from the judgment entered following revocation of probation which had been granted after his plea of guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The trial court sentenced Sizemore to 16 months in state prison. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The plea and pre-Proposition 36 proceedings*

In a complaint filed on October 7, 2004, Sizemore was charged in count one with possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony, and in count two with the misdemeanor of possession of a smoking device in violation of Health and Safety Code section 11364.

At proceedings held on October 18, 2004, Sizemore pleaded guilty to the charge of possession of methamphetamine. He pleaded not guilty to the misdemeanor of possessing a smoking device. Sizemore waived time for a pretrial hearing as to the misdemeanor charge and waived time for entry of judgment as to the felony, possession of methamphetamine. Entry of judgment was deferred for 18 months based on various terms and conditions agreed to by Sizemore.

At a hearing held on January 11, 2005, a probation report making references to violations of the agreed-upon terms of Sizemore's deferred entry of judgment was provided to all of the parties. The deferred entry of judgment was summarily terminated and Sizemore was ordered to report to the probation department no later than January 14, 2005.

### 2. *Sizemore is referred to a Proposition 36 program*

At court proceedings held on February 24, 2005, Sizemore admitted having violated the terms of his deferred entry of judgment in that he had used methamphetamine. When the trial court "terminated" the deferred entry of judgment, Sizemore requested consideration under Proposition 36. The trial court granted Sizemore's request and referred him to a Proposition 36 program.

On March 24, 2005, imposition of sentence was suspended and Sizemore was placed on probation for a period of 18 months under the provisions of Proposition 36. On April 14, 2005, Sizemore reported to the trial court for a Proposition 36 progress report. At that time, he had committed no violations of the terms and conditions of his probation. However, on June 22, 2005, the case was called for Sizemore's first probation violation hearing.

### 3. The July 22 and October 17, 2005 probation violation proceedings

At the hearing held on July 22, Sizemore and his counsel stipulated to a probation violation and the trial court found Sizemore had violated the terms of his probation by using a false device and providing a false urine sample. The trial court revoked probation, terminated Sizemore's participation in the Proposition 36 program and ordered him placed in a 24-hour-a-day residential drug treatment program at Las Encinas Hospital pending a dispositional hearing.

At the hearing held on October 17, 2005, the trial court imposed, then suspended, a 16-month prison sentence for Sizemore's admission he had possessed methamphetamine as alleged in count one, then again placed Sizemore on Proposition 36 probation for 36 months. The misdemeanor count alleging Sizemore had possessed a smoking device was dismissed.

### 4. The February 2006 proceedings

On December 2, 2005, the trial court indicated it had reviewed a recent probation report which indicated Sizemore had had one positive drug test. Accordingly, the trial court set a hearing regarding Sizemore's second violation of probation for January 13, 2006. The hearing actually took place from February 2 to February 9, 2006.

On February 2, 2006, Sizemore's probation officer testified that Sizemore was to bring to her on December 8, 2005, proof that he had registered as a narcotics offender. Sizemore, however, had failed to do so. He had not reported to the probation officer at all that day. In addition, Sizemore had failed to appear at the first of several meetings of the 12-step narcotics program he had been ordered to attend. Although the meetings had begun in December 2005, he first attended a meeting on January 9, 2006.

A second deputy probation officer testified that he worked in the narcotics testing unit. He supervised the giving of samples by defendants on formal probation, then reviewed the results from the tests performed on the samples. In November 2005, the officer was to supervise the giving by Sizemore of a urine sample for drug screening. The screening test came out positive for

methamphetamine. It was determined, however, that Sizemore was taking a prescription drug which might have altered the results of the test.

Yet another probation officer, the officer primarily responsible for supervision of Sizemore, testified that on January 5, 2006, she notified Sizemore by leaving a message on his cellular telephone that he was to come in for testing at 8:00 a.m. on January 9. In the message, the probation officer emphasized the importance of the test and that it would be considered a "positive" if Sizemore missed the appointment. Sizemore left a voice mail message for the probation officer between noon and 1:00 p.m. on January 9 indicating he would not be able to come in for the test because he had a meeting and "a rehearsal for a movie." Although the probation officer left a message for Sizemore indicating he nevertheless needed to come in, the probation officer did not again hear from Sizemore. In her report, the probation officer noted that Sizemore was "not making an effort to cooperate." The probation officer testified that, had Sizemore shown up late for his testing, the officer would have accepted the test. The officer noted that on several occasions Sizemore had been late for appointments. When asked how she would rate Sizemore's performance on probation up to January 9, 2006, the probation officer answered, "I can't even say that it would be Okay. It's below the standards of what [I think] should be as far as compliance with probation." The officer indicated Sizemore had, among other problems, a "history" of failing to appear for appointments. He had, however, as requested by the probation officer, gone for drug testing on January 23. In addition, during an interview with the probation officer on that date Sizemore had admitted having used methamphetamine on December 23, 2005, January 18, 2006, and January 21, 2006. He also brought to the officer papers indicating he had registered as a narcotics offender.

Dr. Joseph Haraszti, a psychiatrist and addictionologist, is Sizemore's treating physician. Haraszti was of the opinion that, although progress had been slow, Sizemore had been amenable to drug treatment and rehabilitation. Haraszti believed that by October 17, 2005, Sizemore "had really made tremendous strides and his self-esteem was back, his confidence was back, his mood was stable, [and] he was responding to the [prescription] medications." It was Haraszti's opinion that Sizemore was "eminently treatable as of October 17." The doctor believed that Sizemore had had a "very serious substance abuse problem," but that he had taken "tremendous strides" to correct it.

### 5. *The Proposition 36 program is terminated*

On February 9, 2006, the trial court found Sizemore had violated his probation on a number of occasions by committing drug-related offenses, but

that he was "entitled to the protections of [section] 1210.1 of the Penal Code,"[1] or Proposition 36. However, Sizemore indicated that he wished to "opt out" of Proposition 36 and instead attend a live-in program called Cri-Help for six weeks as a condition of "regular probation." As part of a negotiated disposition, Sizemore agreed he would undergo drug testing at some point each week both during and after the treatment program until he had completed probation. The trial court approved the agreed-upon disposition and transferred the matter from the Proposition 36 courtroom to a courtroom in a different department where another judge would supervise Sizemore. There, after Sizemore admitted violating probation by using methamphetamine, the trial court found him to be in violation of probation and revoked Proposition 36 probation. The court stated: "[A]t the defendant's request Prop. 36 is terminated and I will now place you on regular felony probation with the terms and conditions that the People are willing to live with as well as the normal terms and conditions of probation that I give to everybody that's on regular felony probation for methamphetamine." Before terminating Proposition 36 probation, the trial court commented: "Now, the next step, counsel, and we've discussed this, you have—your client has the right to reinstatement of Prop. 36; if so it's my intention to refer him immediately to a drug program. I will recommend a residential program and we have discussed at length the problems with his ability to be able to conform to all of the requirements, the rules and the regulations of Prop. 36. In my view, and I think in counsel's view, it's just not realistic. . . . [¶] You may be able to do it in a different way, but not with all of the requirements for Prop. 36, because, Mr. Sizemore, let me tell you, you'll go into a residential program and you'll be off the air and there wouldn't be any breaks for any movies or anything like that, and when you're done with that what will happen then is you go into an after-care program, and that requires meetings up to five nights a week, and that schedule I don't think you're prepared to make at this point. [¶] So I understand then that there will be a defense motion made on behalf of the defendant to terminate Prop. 36 at this time."

The trial court then granted Sizemore "formal felony probation for a period of 36 months" with various terms and conditions. When the trial court asked Sizemore if he understood and accepted "the terms and conditions of probation," Sizemore answered, "Yes, I do, Your Honor."

### 6. *The May and June 2007 probation revocation proceedings*

On May 24, 2007, the prosecutor made a motion to "[r]evoke [Sizemore's] probation, remand [him], and calendar the matter for further proceedings." It was specifically alleged Sizemore had violated his probation by incurring a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

new case filed in the Kern County Superior Court alleging the felony of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a).

At a hearing held on June 19, 2007, the trial court advised Sizemore that he had the "right to a formal probation violation hearing [during which his] attorney would be able to ask questions of any witnesses called by the People to testify against [him,] [and during which his] attorney [could] subpoena witnesses to come into court to testify for [him] at no cost to [him,] [and that he had] the right against self-incrimination." The trial court explained that "[n]o one [could] force [Sizemore] to say anything against [him]self." When the trial court then asked Sizemore if he wished to give up those rights and admit that he was in violation of the terms of his probation, Sizemore responded, "Yes, I do, Your Honor." The trial court then found Sizemore in violation of probation.

Prior to sentencing, Sizemore presented the testimony of addiction psychiatrist, Timothy Fong. Fong had spent two hours interviewing Sizemore and had reviewed Sizemore's court files, including a portion of the police report regarding Sizemore's most recent Kern County arrest. He had then prepared two written reports regarding Sizemore's addiction and what he perceived to be the most beneficial treatment for Sizemore. Fong was of the opinion that, although he had had "a multitude and well over 600 days of what we call residential treatment for methamphetamine dependence[,] [w]hat was very clear . . . upon [his] evaluation [was] that at the times of his use of methamphetamine in May of 2007," Sizemore "was not receiving enough ongoing continuous specialized treatment for methamphetamine dependence." Fong's "primary recommendation based on [his] evaluation" was that Sizemore "continue to receive ongoing continuous specialized addiction treatment on an intensive and extended outpatient treatment level." Fong was of the opinion "that part of the reason why Mr. Sizemore's disease returned in this instance is that he was not getting consistent and ongoing continued professional addiction care. He was attending a couple 12-step meetings, he had a private psychiatrist, but that was about it." Fong indicated that "[t]he trouble [he had] with residential treatment . . . [was that] Mr. Sizemore [would] not be able to work, [and] once it ends it doesn't provide ongoing continuous treatment [or] care." Fong continued, "[A]ddiction isn't just a one-shot deal. You just don't get one shot. You can have multiple times of going through treatment before you get better, just like people trying to lose weight have multiple attempts at diet and exercise to lose the weight. It's the same thing with drug addiction. It requires multiple levels of treatment and multiple attempts at treatment to get patients sober." Fong did not consider incarceration to be "treatment." He stated he had "never actually seen a truly integrated drug treatment program in the jail system." Instead, Fong was of the opinion that addicts who are "meaningfully, gainfully employed do much

better in terms of outcome from drug addiction treatment." As to Sizemore, Fong was of the opinion the People had not "tried everything" short of incarceration. Fong indicated he did not believe the People had attempted intensive treatment with frequent drug testing which lasted a year or more.

On cross-examination Fong stated that for treatment to be effective, it requires voluntary compliance by the addict as well as "accountability, responsibility, motivation [and] honesty." In making his assessment, Fong had relied heavily on statements made by Sizemore. In addition, although Fong had reviewed documents from the present court case, he had not considered documents from any of Sizemore's prior cases, including those indicating Sizemore had been convicted of a number of counts of making criminal threats in violation of section 422 and had been convicted of the willful infliction of corporal injury on a spouse or cohabitant in violation of section 273.5. Fong was also unaware of the fact that Sizemore had been charged with vandalism in the pending Kern County case.[2]

Although Fong had read minute orders from some of Sizemore's prior cases, he had not read the probation officers' reports. In particular, Fong had not read the report indicating that on three different occasions Sizemore had used a device called a "whizzinator" to deceive persons administering urine tests. In addition, Fong was not aware of the fact that, since his release from the Cri-Help program, Sizemore had tested positive for methamphetamine and had purchased methamphetamine from a prostitute. Fong *was* aware of the fact that Sizemore had completed only one out of six treatment programs in which he had been enrolled.

After presenting Fong's testimony, Sizemore put on two additional witnesses from "sober living" organizations. After hearing their testimony, the trial court set sentencing proceedings for June 2007.

### 7. *Sentencing*

On June 25, 2007, the trial court sentenced Sizemore to the low term of 16 months in state prison. In addition, the trial court ordered Sizemore to pay a $200 restitution fine (§ 1202.4, subd. (b)), a $20 court security fee (§ 1465.8, subd. (a)(1)), a $50 lab fee (Health & Saf. Code, § 11372.5, subd. (a)), and a stayed $200 parole revocation restitution fine (§ 1202.45). Sizemore was given presentence custody credit for 203 days actually served and 10 days of good time/worktime, for a total of 213 days. The trial court recommended

---

[2] Although vandalism had apparently been charged, it had not been proven by a preponderance of the evidence.

that Sizemore be housed at the Richard J. Donovan Correctional Facility or another facility with "a program to assist [Sizemore] with drug counseling [and] rehabilitation."

Sizemore filed a timely notice of appeal on June 25, 2007.[3]

## CONTENTIONS

Sizemore contends (1) the trial court erred when it found Sizemore "opted out of Proposition 36 because Proposition 36 forbids a defendant from selecting and/or bargaining for his own treatment"; and (2) the trial court abused its discretion when it "refus[ed] to reinstate Mr. Sizemore on Proposition 36 and/or probation and . . . sentenc[ed] [him] to state prison."

## DISCUSSION

1. *The trial court properly removed Sizemore from the Proposition 36 program*

a. *Proposition 36*

Proposition 36, "the Substance Abuse and Crime Prevention Act of 2000 . . . was adopted at the November 7, 2000, General Election, and is largely codified at . . . sections 1210 and 1210.1 . . . ."[4] (*People v. Hazle* (2007) 157 Cal.App.4th 567, 572 [69 Cal.Rptr.3d 16].) The *Hazle* court

---

[3] Contrary to the People's assertion, Sizemore need not obtain a certificate of probable cause. (§ 1237.5.) He is challenging only " 'issues regarding proceedings held subsequent to the plea for the purpose of determining . . . the penalty to be imposed.' " (*People v. Emery* (2006) 140 Cal.App.4th 560, 564 [44 Cal.Rptr.3d 551]; see *People v. Panizzon* (1996) 13 Cal.4th 68, 75–76 [51 Cal.Rptr.2d 851, 913 P.2d 1061].)

[4] Sections 1210 and 1210.1 have been amended a number of times, including amendment on July 12, 2006, by Senate Bill No. 1137 (2005–2006 Reg. Sess.). (Stats. 2006, ch. 63, § 7.) The People indicate a writ of mandate issued by the Alameda Superior Court on July 8, 2008, enjoins them " ' "from taking any action to implement, enforce or give effect to Senate Bill 1137 . . . until . . . further notice of [that] court." ' " However, a writ of mandate issued by the Alameda Superior Court is not necessarily binding on the People for purposes of this case. (See *Regents of University of California v. Superior Court* (1990) 225 Cal.App.3d 972, 976 [276 Cal.Rptr. 197] ["A trial court['s] declaration that a state statute is unconstitutional does not bind state agencies or officials."]; *Fenske v. Board of Administration* (1980) 103 Cal.App.3d 590, 596 [163 Cal.Rptr. 182].) In any event, different versions of this statute have been in effect at different times throughout Sizemore's case. However, because the differences between these versions are not significant for our purposes, we rely on the statute as it was originally enacted. (See, e.g., *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1533 [86 Cal.Rptr.2d 134] ["The minor differences between these versions, however, do not appear significant for our purposes."].)

recognized that " '[b]y replacing incarceration with community-based treatment, Proposition 36 works a sea change in California's response to nonviolent drug possession offenses. In its prefatory statement, it state[d], "The People of the State of California hereby declare their purpose and intent in enacting this act to be as follows: (a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses; [¶] (b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who would be better served by community-based treatment; and [¶] (c) To enhance public safety by reducing drug—related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." ' " (*Ibid.*) The court continued, " 'Anticipating that drug abusers often initially falter in their recovery, Proposition 36 gives offenders several chances at probation before permitting a court to impose jail time.' " (*Ibid.*)

■    The act applies to those who " 'receive[] probation under subdivision (a)' of [former] section 1210.1 ([former] § 1210.1, subd. (e)(3)(A), (B)) for 'a nonviolent drug possession offense.' ([Former] § 1210.1, subd. (a).) The first time such a probationer 'violates that probation . . . by committing a nonviolent drug possession offense,' the Act's mandatory probation provision applies unless 'the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others.' ([Former] § 1210.1, subd. (e)(3)(A), (D).)" (*People v. Guzman* (2005) 35 Cal.4th 577, 585 [25 Cal.Rptr.3d 761, 107 P.3d 860].) "If a defendant receives probation under subdivision (a), and for the second time violates that probation either by being arrested for a nonviolent drug possession offense, or by violating a drug-related condition of probation, and the state moves for a second time to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence either that the defendant poses a danger to the safety of others or is unamenable to drug treatment. In determining whether a defendant is unamenable to drug treatment, the court may consider, to the extent relevant, whether the defendant (i) has committed a serious violation of [the] rules at the drug treatment program, (ii) has repeatedly committed violations of program rules that inhibit the defendant's ability to function in the program, or (iii) has continually refused to participate in the program or asked to be removed from the program. If the court does not revoke probation, it may intensify or alter the drug treatment plan." (Former § 1210.1, subd. (e)(3)(B).)

■    After a third such violation, the mandatory probation provision is inapplicable. (Former § 1210.1, subd. (e)(3)(C), (F).) It is also inapplicable if

a probationer violates probation by committing an offense that is not a nonviolent drug possession offense, or by violating a non-drug-related condition of probation. (Former § 1210.1, subd. (e)(2); *People v. Guzman, supra*, 35 Cal.4th at p. 585; *People v. Hazle, supra*, 157 Cal.App.4th at pp. 572–573.)

Here, after Sizemore's second violation, the trial court found him unamenable to Proposition 36 treatment. That finding is supported by the record. According to the probation officers supervising him, Sizemore had regularly failed to report when ordered to do so. He had also failed to go for narcotics testing and, at various times when he had been tested, had used a device known as a "whizzinator" to deceive persons giving the urine test. On other occasions, he had tested positive for narcotics. Sizemore had failed to appear at the first of several meetings of the 12-step narcotics program he had been ordered to attend and, according to the probation officer primarily responsible for supervising Sizemore, he was "not making an effort to cooperate." In addition, Sizemore expressed a desire to opt out of the program and serve "regular" probation. Given Sizemore's record, as well as his stated desire to "opt out" of the Proposition 36 program, the trial court properly terminated Proposition 36 supervision and placed Sizemore on "regular" felony probation. Once he violated the conditions of that probation, the trial court could properly sentence him to 16 months in state prison. (See former § 1210.1, subd. (e)(1).)[5]

      b.   People v. Campbell *(2004) 119 Cal.App.4th 1279 [15 Cal.Rptr.3d 188]*

Sizemore relies on *Campbell, supra*, 119 Cal.App.4th at page 1283 (*Campbell*), to argue that the trial court erred when it allowed him to "opt out" of the Proposition 36 program. In *Campbell*, in December 2002 the defendant pleaded guilty to possession of methamphetamine and the trial court, pursuant to former section 1210.1, "suspended imposition of sentence[,] placed [him] on probation and ordered him to participate in drug treatment." (119 Cal.App.4th at p. 1283.) On January 23, 2003, the probation department reported that Campbell had tested positive for methamphetamine and, on January 24, the trial court revoked, then reinstated, Campbell's Proposition 36 probation.

Shortly thereafter, Campbell again violated his probation by submitting positive urine samples. When he failed to appear in court for his probation violation hearing, the trial court summarily revoked his probation. On March

---

[5] Former subdivision (e) of Penal Code section 1210.1 provided in relevant part: "Violation of probation [¶] (1) If probation is revoked pursuant to the provisions of this subdivision, the defendant may be incarcerated pursuant to otherwise applicable law without regard to the provisions of this section."

11, 2003, Campbell admitted he had violated his probation and, on April 9, the trial court ordered Campbell to be interviewed for a residential treatment program.

At sentencing proceedings held on July 3, 2003, "the assessment officer reported that [Campbell] was on the waiting list for residential treatment at Turning Point and that he 'should be placed fairly quickly.' [Campbell] requested that the court consider outpatient treatment and stated the following: 'Your Honor, could I say something? I mean, if I just—what I want, I've been here like four months. I know it's to my own doing. I got violated for the same thing I'm in 1210 court for. I'm not complaining about that, but if I could just have enough rope to hang myself to prove [to] myself and to you I want this program, I can do this. I just want one chance, is all I'm asking for. I'll take whatever outpatient treatment they want to give me. It don't [*sic*] matter. I've got a clean and sober house to live at, a job right now, and I've got the willingness and wantingness [*sic*] to do this. I just ask for like one chance.' " (*Campbell, supra,* 119 Cal.App.4th at p. 1283, fn. omitted.) The trial court responded: " 'Well, I'll pass this . . . so [defense counsel] can talk with [Campbell], because if I give him this one chance it will be on the stipulation that he agrees that if he has any program violations, misses a test, it's dirty, miss anything else, he will stipulate to a three-year CDC commitment and waive any protection under [section] 1210.' " (*Campbell,* at p. 1284.)

After a break, during which defense counsel unsuccessfully attempted to persuade Campbell to remain in the Proposition 36 program, Campbell indicated he still wished to " 'try to go to outpatient and do whatever he's told to do on outpatient.' " (*Campbell, supra,* 119 Cal.App.4th at p. 1284.) The trial court allowed Campbell to opt out of the Proposition 36 program and the protections afforded by it and to attempt to complete an outpatient program. "The court explained: 'I'm going to allow you to shoot yourself in the foot this way, so the Court is going to order that upon completion of your sentence—well, at this point he waives any further arraignment for judgment or sentence?' Defense counsel responded that he did, and the court continued: 'For his violation the Court is going to reinstate him on probation. . . .' " (*Ibid.*)

On August 27, 2003, Campbell admitted having violated the terms of his probation by driving with a suspended license and without proof of insurance. Campbell had, however, "remained 'clean and sober since he was last in custody.' " (*Campbell, supra,* 119 Cal.App.4th at p. 1284.) After indicating that Campbell might also be facing a robbery charge, the trial court denied probation and committed Campbell to state prison for the stipulated term of three years.

On appeal, Campbell contended "the [trial] court erred in requiring him to stipulate to an upper term sentence in return for outpatient treatment following his second drug-related violation of probation. Such an agreement, [Campbell] assert[ed], contravene[d] the mandates of Proposition 36." (*Campbell, supra,* 119 Cal.App.4th at p. 1285.) In considering the matter, the appellate court indicated the "question before [it was] whether the statute permits the trial court to provide the treatment desired by the defendant on the condition that the defendant accept a particular sentence if probation is later violated. In considering this issue [the court] look[ed] to the express language of the statute. The statute specifies that when a person commits a drug crime the 'court shall require participation in and completion of an appropriate drug treatment program . . . .' ([Former] § 1210.1, subd. (a).) If the defendant commits a drug-related violation of probation and the court does not revoke probation, the court 'may intensify or alter the drug treatment plan.' [Citation.]" (*Campbell,* at pp. 1287–1288.) The court continued: "It is the court, not the defendant, that is to determine the 'appropriate' drug treatment program and is to decide whether to 'alter' or 'intensify' the program. This statute does not allow for the defendant—who has a drug abusing history—to determine the 'appropriate' treatment. Accordingly, permitting the drug abusing defendant to select the treatment to be provided on the condition that the defendant accepts a particular sentence should the defendant subsequently violate probation is clearly contrary to the mandates of the statute and is unauthorized." (*Id.* at p. 1288.)

The court noted that "the purpose of the statute—to rehabilitate—and its mandate—that the court require participation in and completion of an 'appropriate' drug treatment program [citations]—are frustrated if the court, against its better judgment and while acknowledging that it was permitting defendant 'to shoot [himself] in the foot,' abandons its responsibility and allows the defendant to bargain for treatment that the court expressly expected to fail." (*Campbell, supra,* 119 Cal.App.4th at p. 1289.)

The present case differs substantially from *Campbell.* In *Campbell,* the trial court allowed Campbell to dictate the terms of his probation on the condition that, should he fail, as the trial court fully expected he would, he nevertheless would waive the protections afforded him under Proposition 36 and instead be sentenced to a term in prison. Here, there was no such "bargaining."

The trial court determined Sizemore was unamenable to Proposition 36 treatment. The court stated that, in its view, for Sizemore to continue under Proposition 36 was simply "not realistic." The trial court recognized that Sizemore could not comply with all the requirements of a Proposition 36 program. In addition, Sizemore, who apparently himself did not believe he could comply with the requirements of Proposition 36, had expressed a desire

to opt out of the program and serve "regular" probation. It was only after making these observations that the trial court indicated it would grant "a defense motion made on behalf of the defendant to terminate Prop. 36 . . . ." The trial court then granted Sizemore "formal felony probation for a period of 36 months" on various terms and conditions. When the trial court asked Sizemore if he understood and accepted "the terms and conditions of probation," Sizemore answered, "Yes, I do, Your Honor."

In this case, unlike in *Campbell*, it was the trial court, not defendant, who determined defendant was not suitable for Proposition 36 treatment. The trial court did not allow Sizemore to dictate terms which the trial court believed Sizemore could not comply with. The trial court did not knowingly allow Sizemore to enter into a program the result of which would be that Sizemore would " 'shoot [him]self in the foot.' " (*Campbell, supra*, 119 Cal.App.4th at p. 1284.)

### c. *Ineffective assistance of counsel*

Sizemore contends his trial counsel was ineffective for proposing that he "opt out" of the Proposition 36 program and instead be placed on "regular" felony probation. The contention is without merit.

■ Under both the United States and California Constitutions, a criminal defendant is entitled to the effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839], citing *Strickland v. Washington* (1984) 466 U.S. 668, 684–685 [80 L.Ed.2d 674, 104 S.Ct. 2052].) In order to show ineffective assistance, a defendant must first demonstrate that counsel's performance was deficient. (*People v. Ledesma, supra*, at p. 216.) Second, the defendant must show that counsel's deficient performance caused him prejudice. (*Id*. at p. 217.) "[P]rejudice must be affirmatively proved. [Citations.] 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id*. at pp. 217–218.)

After Sizemore's second violation under Proposition 36, the trial court indicated it believed he was unamenable to Proposition 36 treatment. The court stated: "In my view, and I think in counsel's view, it's just not

realistic. . . . [¶] You may be able to do it in a different way, but not with all of the requirements for Prop. 36 . . . ." Under these circumstances, counsel was not deficient for acquiescing in Sizemore's request to proceed under the terms of "formal felony probation."

Moreover, Sizemore did not suffer prejudice as a result of counsel's performance. Even if Sizemore had elected to proceed under the provisions of Proposition 36, his arrest in Kern County would have been his third violation. Under Proposition 36, after three violations, the mandatory probation provision is inapplicable. (Former § 1210.1, subd. (e)(3)(C), (F).) Accordingly, under either the provisions of Proposition 36 or felony probation, Sizemore could have been sentenced to prison.

    2.   *The trial court properly exercised its discretion when it sentenced*
         *Sizemore to 16 months in prison*

"A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner. [Citations.]" (*People v. Delson* (1984) 161 Cal.App.3d 56, 62 [207 Cal.Rptr. 244]; see *People v. Downey* (2000) 82 Cal.App.4th 899, 910 [98 Cal.Rptr.2d 627].) "Absent a clear showing the decision to deny probation is arbitrary or irrational, it is presumed the trial court acted to achieve legitimate sentencing objectives. [Citation.]" (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 186 [265 Cal.Rptr. 780].)

Here, Sizemore was given numerous opportunities to comply with the conditions of the deferred entry of judgment, the Proposition 36 program and the conditions of formal felony probation. Instead, he violated the terms of the deferred entry of judgment and repeatedly violated the terms of the Proposition 36 program by failing to report, reporting late, using a device to provide false urine samples, and testing positive for methamphetamine. Sizemore then violated the terms of his formal felony probation by incurring a new case filed in Kern County Superior Court alleging possession of a controlled substance.

Given Sizemore's history, it cannot be concluded the trial court erred by sentencing him to state prison. Sizemore has failed at every attempt at probation and the trial court indicated it believed Sizemore would benefit from a narcotics program such as the one given at the Donovan state prison. Accordingly, the trial court recommended that Sizemore be housed there or at another facility with "a program to assist [Sizemore] with drug counseling [and] rehabilitation." There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

Croskey, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 2009, S175458.