Filed 4/17/15  P. v. Sickler CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL DYLAN SICKLER,<br><br>    Defendant and Appellant. | A140300<br><br>(Solano County<br>Super. Ct. No. VCR218053) |

Defendant Michael Dylan Sickler appeals from an order sentencing him to state prison after he admitted a violation of felony probation.  He argues that the trial court's refusal to reinstate him on probation was an abuse of discretion because his need for residential treatment outweighed the danger to the community posed by defendant's repeated driving under the influence of alcohol.  We find no abuse of discretion by the trial court and affirm the judgment.

## BACKGROUND

The underlying facts are not in dispute, and we summarize them, as did the parties, from the probation reports.

On May 21, 2011, defendant was the driver, and the cause of a serious collision in Lake County, when he crossed over a double yellow line and hit an oncoming car.  A highway patrol officer interviewed defendant at the scene.  Defendant blamed the other driver:  "That fool crossed into my lane.  I ran his car over."  Defendant smelled of alcohol, had red and watery eyes, and failed to perform a series of field sobriety tests.

1

Defendant was placed under arrest and later found to have a blood alcohol level of 0.22 percent, nearly three times the legal limit.

The driver of the other car, Guy Johnson, told the highway patrol officer that defendant's car was approaching at a high rate of speed and crossed over into Johnson's lane. Johnson did not have time to react. Both cars sustained major damage. Johnson suffered severe injuries, including a lacerated spleen requiring a blood transfusion, a badly sprained left ankle, lower leg pain, and a badly lacerated left leg. Johnson spent 15 days in the hospital, including two in the intensive care unit. Johnson suffered and sought counseling for post traumatic stress disorder as a result of the accident. His lost income and expenses were in excess of $50,000, not including future lost wages.

On April 16, 2012, defendant pleaded guilty in Lake County Superior Court to a felony violation of Vehicle Code section 23153, subdivision (a), driving under the influence of alcohol and causing injury, and admitted the related enhancement for personally causing great bodily injury (Pen. Code, § 12022.7).

On May 22, 2012, Judge Stephen O. Hedstrom suspended imposition of sentence and placed defendant on probation for five years. Defendant's conditions of probation included that he serve 365 days in the county jail, obey all laws, abstain from use of alcohol, and consent upon request of any law enforcement officer to submit samples of his bodily fluids for the purpose of determining the presence of alcohol or drugs, with or without probable cause or a search warrant.

On May 21, 2013, the case was transferred to Solano County in light of defendant's residence in Vallejo.

On July 16, 2013, while on probation for the Lake County felony, defendant was arrested in Vallejo for driving under the influence of alcohol, hit and run, and refusing to submit to alcohol testing. Defendant ran a stop sign and hit another car. He then kept on driving, but the front license plate of defendant's SUV was left at the scene. Vallejo Police Department officers arrived at the scene and found the license plate. The police officers went to defendant's home to investigate. He wasn't there, but the officers saw him drive past the home. They made a traffic stop and took defendant into custody.

2

Defendant smelled of alcohol, had red and watery eyes, slurred speech, and staggered so much that he needed assistance to stand. Defendant was belligerent and refused to answer questions. Because he could not or would not follow the officers' instructions on field sobriety tests, the officers stopped trying to perform any tests. Defendant refused to submit to a breath or blood test, even after the officers read him the advisement regarding the implications of refusing a chemical test.

Defendant later talked to the Solano County probation office about the Vallejo arrest. He said he had been drinking six to eight shots of alcohol with a friend before he drove his SUV home. Although defendant admitted that he had been driving, he would not accept responsibility for the accident, stating that "there was not even a scratch on my car." He insisted that he had been cooperative with the police officers. According to the probation report, defendant "acknowledged he is an alcoholic and he will consume alcohol at every opportunity in an effort to get drunk and stay drunk."

On July 18, 2013, defendant's probation was summarily revoked based on his Vallejo drunk driving arrest.

On September 23, 2013, in Solano County Superior Court, defendant admitted a violation of his probation by failing to obey all laws.

At the sentencing hearing on November 12, 2013, the court (Judge Tim P. Kam) revoked defendant's probation and sentenced him to state prison. The court reviewed the probation report, the letters submitted on behalf of and in connection with defendant's request for probation, and heard from counsel and the defendant himself. The court stated that he had considered his decision "extensively." The court stated:

"In terms of whether to grant probation or not, I—some of the factors I've considered are, one, the underlying offense; it was extremely serious. And it appeared to the Court from looking at the records from Lake County that it was somewhat of a generous break for the defendant there when he was sentenced to a year. It was a DUI with injury, leading to severe injuries to the victim in that case and admitted a great bodily injury enhancement.

3

"In that case the defendant was—statements of the victim was that the defendant was driving at a high rate of speed, crossed the double-yellow lines, and his blood alcohol level was .2122, and there was the collision leading to substantial injuries to the victim in that case. His statement at that point to the officers, according to the probation report in the Lake County case was: 'That fool crossed into my lane. I ran his car over.'

"I recognize maybe that statement was made while he had been drinking.

"In considering whether to . . . reinstate probation now—the instant violation as described in the current probation report, again, involves a collision. The defendant was described as being belligerent to the officers. He took six to eight shots prior to driving that evening, refused a blood or breath test despite our implied consent laws, despite being ordered as a term of probation to do that. He refused responsibility for the collision. He indicated, 'There was not even a scratch on my car,' yet there was a license plate left at the scene. I recognize the defense arguments, he may just have been intoxicated and not aware of that.

"In light of the new offense, I simply cannot, in good faith, reinstate probation. When you are on probation for a DUI where you basically almost kill someone or leave them substantially injured and you serve a year in jail, if that is not a wake-up call, then this certainly is not, in my mind, something that is going to wake you up—get in another violation, another collision. Again, I think the attitude is consistent between the two offenses, between, 'That fool crossed into my lane, I ran his car over.' And then, again, being belligerent and refusing breath test/blood test to the officers in the present case.

"In light of these factors, the factor—the facts of the new violation, further probation is simply not appropriate. So I will deny a further grant of probation."

The court then discussed the aggravating and mitigating factors to be considered in determining the underlying sentence. Aggravating factors included driving at a high rate of speed, crossing the double yellow line, the .2122 blood alcohol result, and defendant's attitude. The mitigating factors were that defendant "obviously does have [a] substantial alcohol problem—and I recognize that—but I have to balance that with public safety. And on these facts, [defendant] is a danger to the public, should he drive again."

4

The trial court imposed the midterm of two years state prison on the Vehicle Code section 23153 count, and an additional three years for the great bodily injury enhancement, for an aggregate term of five years in state prison.

This appeal followed.

## DISCUSSION

The only issue on appeal is whether the trial court abused its discretion in denying defendant's request to be reinstated to probation where defendant was 21 years old and willing to participate in a residential alcohol treatment program.

It is well established that "probation is not a matter of right, but an act of grace or clemency, the granting or denial of which is within the court's discretion." (*People v. Axtell* (1981) 118 Cal.App.3d 246, 256.) "The trial judge's discretion in determining whether to grant probation is broad." (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178-179.)

"A defendant who is denied probation bears a heavy burden to show the trial court has abused its discretion." (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1157.) A court's refusal to reinstate probation " 'will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) Further, " '[a]bsent a clear showing the decision to deny probation is arbitrary or irrational, it is presumed the trial court acted to achieve legitimate sentencing objectives.' " (*People v. Sizemore* (2009) 175 Cal.App.4th 864, 879.)

Defendant argues that this case presents a "compelling instance of the need for intensive residential treatment outweighing the danger to the community posed by [defendant's] severe alcohol addiction." Defendant contends that the trial court focused "solely on the danger [defendant] posed to the community, and . . . failed to credit his desire for and attempts to obtain treatment."

5

Defendant points to the following information that was before the court at the time the trial judge determined that defendant would not be reinstated on probation: According to defendant's father, defendant was deeply affected by the death of his grandmother when he was 15. Looking back on it, defendant's father thinks defendant "most likely" started drinking then. Defendant had a short-term job in a refinery in Vallejo, and then stopped working while awaiting the birth of his son. Defendant had family and community support, potential for employment, and a stable residence. Defendant committed the underlying crime in Lake County when he was 19. Although he had two more DUI convictions (including one in Solano County after he was charged with the Lake County DUI but prior to being placed on probation), all of the DUI's were committed within about two and one half years, a relatively short time period. Defendant attended outpatient treatment at Kaiser Hospital after his first DUI, but was denied entry to the residential treatment program due to his age at the time. While in custody in Solano County from August through October 2013, defendant participated in 125 hours of group alcohol and drug treatment classes. He had been accepted into residential treatment programs at the time of the sentencing in this case.

Further, although the probation department "gave very serious consideration for a state prison recommendation," it ultimately recommended that defendant be permitted a "single opportunity" to attend and complete a long-term residential treatment program after another 365 day jail term.[1]

Defendant contends that the court failed to recognize that defendant was "thwarted in his efforts to obtain residential treatment, and did his best to remain sober via 12-step

---

[1] The probation report stated, "Based on the court's request, the defendant's case was staffed with the Probation Department Placement Committee in an effort to assess his appropriateness for placement in a long-term residential substance abuse program. Although the committee expressed great concern about the magnitude of the defendant's alcohol addiction at such a young age, considering his threat to community safety, minimal prior intervention, and his desire for a long term structured treatment program, the defendant was found amenable for treatment. . . ."

6

meetings during the 14 months between the grant of probation and the new violation of probation offense."

On this record, we cannot state that the trial court abused its discretion. The court considered the report from the probation office, including its recommendation that defendant be reinstated on probation and placed in a residential treatment program.[2] The trial judge was not required to follow the recommendations in the probation report. (See *People v. Downey, supra,* 82 Cal.App.4th at p. 910.) The court gave a lengthy statement of its reasons for not reinstating defendant on probation, resting its decision on legitimate concern for the safety of the public. This was not a minor or technical violation of probation. Defendant, while on probation for felony DUI that caused great bodily injury to a victim, was once again arrested for driving under the influence of alcohol, after he ran a stop sign, hit another vehicle, drove off without stopping, and belligerently refused to submit to alcohol testing. The trial judge was rightfully concerned that defendant, who admitted to drinking six to eight shots of alcohol before he got behind the wheel of his SUV and was so intoxicated that he could not stand up straight, was a danger to the public. This was defendant's third DUI conviction in a short span of time. Under these circumstances, the trial court did not abuse its discretion in deciding to place more weight on the safety of the public than on reinstating defendant, even with his substantial alcohol problem, to probation with residential treatment conditions.

## DISPOSITION

The judgment is affirmed.

---

[2] The Solano County probation report also stated that since the time that defendant completed the Kaiser outpatient program, "with the exception of 12-step meetings, the defendant has failed to actively participate in any meaningful structured treatment program unless in custody."

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Richman, J.