[No. S119129. Mar. 21, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY GUZMAN, Defendant and Appellant.

578

582

**Counsel**

Jose R. Villarreal, Public Defender, and Seth Flagsberg, Deputy Public Defender, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass and Gerald A. Engler, Assistant Attorneys General, Catherine A. Rivlin, William Kuimelis, Seth K. Schalit, Bridget Billeter and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

David R. LaBahn; George Kennedy, District Attorney (Santa Clara); Bonnie M. Dumanis, District Attorney (San Diego), Anthony Lovett and James Valliant, Deputy District Attorneys, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

CHIN, J.— ■ The Substance Abuse and Crime Prevention Act of 2000 (Act), which the voters of California enacted through Proposition 36, requires courts to order probation and community-based drug treatment rather than incarceration for certain criminal offenders who commit " 'nonviolent drug possession offense[s]' " (NDPO's). (Pen. Code, § 1210, subd. (a).)[1] We granted review in this case to determine whether the Act violates the right of equal protection under the federal and state Constitutions by failing to make this probation requirement applicable to defendants who commit NDPO's while on probation for offenses that are not NDPO's (non-NDPO's). After concluding that under the statutory language, this requirement does not apply to such defendants, the Court of Appeal found that this omission denies equal protection because the requirement does apply to *parolees* who commit NDPO's while on parole after completing prison terms for non-NDPO's. (See § 3063.1, subd. (a).) To remedy this perceived constitutional violation, the Court of Appeal construed the requirement also to apply to offenders who commit NDPO's while on probation for non-NDPO's.

We agree with the Court of Appeal that under the language of the governing statutes, the Act's probation requirement does not apply to offenders who commit NDPO's while on probation for non-NDPO's. However, we disagree that exclusion of these offenders violates the right of equal protection. We therefore reverse the Court of Appeal's judgment.

FACTUAL BACKGROUND

In February 2001, defendant Gregory Guzman pleaded no contest to inflicting corporal injury on a cohabitant (§ 273.5) and committing a misdemeanor battery upon a peace officer engaged in his duties (§§ 242, 243, subd. (b)). According to the probation report, during an argument, defendant struck his live-in girlfriend, who is also the mother of his children, in the eye and in the mouth. The first blow knocked defendant's girlfriend back into a bedroom wall and left her eyelid black and swollen; the second left her lip bloody and swollen. As police attempted to handcuff defendant, he tried to break free and yelled at the officers, calling them "fucking bitches." Defendant also spit on one of the arresting officers. Testing of a blood sample taken after his arrest revealed that defendant was under the influence of methamphetamine and phenylcyclidine. After taking defendant's plea, the court placed him on probation for three years with the condition (among others) that he serve eight months in county jail.

---

[1] All further undesignated statutory references are to the Penal Code.

On October 16, 2001, in a separate action, defendant pleaded guilty to possessing methamphetamine and being under the influence of a controlled substance (Health & Saf. Code, §§ 11377, 11550). Both of these offenses qualify under the Act as NDPO's. (Pen. Code, § 1210.1, subd. (a).) For these convictions, the court granted probation and ordered drug treatment under the Act.

However, defendant was later arraigned on a petition to revoke the probation he received in the separate case now before us, which involves only his convictions of inflicting corporal injury and battery on a police officer. He filed a "Motion to Compel Drug Treatment Pursuant to Proposition 36." The trial court found that defendant had violated probation, denied his motion for drug treatment under the Act, and imposed the two-year mitigated prison term for his conviction of inflicting corporal injury.

The Court of Appeal reversed. Although agreeing with the trial court that under the statutory language, defendant is not eligible for mandatory probation under the Act, the Court of Appeal held that this omission violates defendant's constitutional right of equal protection because a parolee who commits an NDPO while *on parole* after serving a sentence for inflicting corporal injury is eligible for mandatory probation under the Act. To remedy this perceived constitutional violation, the Court of Appeal construed the Act as applying to defendant.

We then granted the People's petition for review.

## DISCUSSION

### I. *Defendant Is Not Entitled to Probation Under the Act's Language.*

■ Part of the threshold inquiry in assessing an equal protection claim is whether the law, in fact, accords "disparate treatment" to similarly situated persons. (*People v. Raszler* (1985) 169 Cal.App.3d 1160, 1166–1167 [215 Cal.Rptr. 770]; see also *National Union v. Arnold* (1954) 348 U.S. 37, 41 [99 L.Ed. 46, 75 S.Ct. 92] [no equal protection violation absent showing "that anyone comparably situated has been treated differently from petitioner"].) Thus, the question of whether the Act denies equal protection necessarily includes the threshold question of whether probationers like defendant are entitled to mandatory probation under the Act. If they are, then the equal protection claim at issue here necessarily fails.

■ As we recently explained, in general terms, the Act "mandates probation and diversion to a drug treatment program for those offenders whose illegal conduct is confined to using, possessing, or transporting a controlled substance. Its provisions outline 'an alternative sentencing scheme' for persons convicted of certain drug offenses. [Citation.] 'In effect, it acts as an exception to the punishment' provided for certain offenses involving controlled substances. [Citation.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1275 [14 Cal.Rptr.3d 1, 90 P.3d 1168] (*Canty*).)

More specifically, the Act provides that "[n]otwithstanding any other provision of law" and subject to specified exceptions, "any person convicted of a nonviolent drug possession offense shall receive probation," and "[a]s a condition of probation . . . shall [be] require[d] [to] participat[e] in and complet[e] . . . an appropriate drug treatment program." (§ 1210.1, subd. (a).) Under the Act, the offenses that qualify as NDPO's are "the unlawful personal use, possession for personal use, or transportation for personal use of any controlled substance identified in Section 11054, 11055, 11056, 11057 or 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code." (§ 1210, subd. (a).) Thus, in the case now before us, defendant's convictions of inflicting corporal injury and battery on a police officer are not NDPO's within the meaning of the Act and do not qualify him for mandatory probation under the Act.

■ The Act includes a provision that addresses probationers. (§ 1210.1, subd. (e).) It refers only to two categories of probationers: (1) those who were already "on probation at the effective date of th[e] [A]ct for a nonviolent drug possession offense" (§ 1210.1, subd. (e)(3)(D), (E)); and (2) those who "receive[] probation under subdivision (a)" of section 1210.1 (§ 1210.1, subd. (e)(3)(A), (B)) for "a nonviolent drug possession offense." (§ 1210.1, subd. (a).) The first time such a probationer "violates that probation . . . by committing a nonviolent drug possession offense," the Act's mandatory probation provision applies unless "the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others." (§ 1210.1, subd. (e)(3)(A), (D).) After a second such violation, the mandatory probation provision applies unless "the state proves by a preponderance of the evidence either that the defendant poses a danger to the safety of others or is unamenable to drug treatment." (§ 1210.1, subd. (e)(3)(B), (E).) After a third such violation, the mandatory probation provision is inapplicable. (§ 1210.1, subd. (e)(3)(C), (F).) It is also inapplicable if a probationer violates the probation he received for an NDPO by committing "an offense that is not a nonviolent drug possession offense, or by violating a non-drug-related condition of probation." (§ 1210.1, subd. (e)(2).) None of these provisions applies to defendant because he was on probation for inflicting corporal injury on a cohabitant and battery on a police officer, which are not NDPO's.

■ The Act also includes a provision that addresses parolees. It provides generally that "[n]otwithstanding any other provision of law" and subject to specified exceptions, "parole may not be suspended or revoked for commission of" an NDPO. (§ 3063.1, subd. (a).) Instead, a parolee committing such an offense *must* "participat[e] in and complet[e] . . . an appropriate drug treatment program." (*Ibid.*) If, "during the course of drug treatment" ordered "under" this provision, a parolee "violates parole . . . by committing" an NDPO, parole may not be revoked unless "a preponderance of the evidence establishes that the parolee poses a danger to the safety of others." (§ 3063.1, subd. (d)(3)(A).) A parolee committing a second such parole violation under these circumstances "is not eligible for continued parole under" the Act. (§ 3063.1 subd. (d)(3)(B).) A parolee also loses eligibility for continued parole under the Act by "committing an offense other than a nonviolent drug possession offense, or by violating a non-drug-related condition of parole." (§ 3063.1, subd. (d)(2).) As this discussion demonstrates, the sections of the Act relating to probation and parole are somewhat parallel in terms of the effect they accord to the commission of new offenses. However, as here relevant, they differ in one important respect: the probation provision applies by its terms only if the offender is on probation for an NDPO, whereas the parole provision applies regardless of whether the crime that led to the parole period is an NDPO. Of course, the parole provision does not apply to defendant because he was not on parole when he committed the NDPO's.

Indeed, defendant concedes that under the statutory language, "no . . . section" extends the Act's mandatory probation provision to probationers who, like defendant, are on probation for a non-NDPO when they commit an NDPO. However, he asserts that for three reasons, we should consider this omission to be merely an "oversight" by "the authors" of Proposition 36. First, this conclusion "is in accord with the [Proposition 36] ballot materials submitted to the voters" and the Act's purpose as expressly set forth in section 3 of the Act. (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) text of Prop. 36, § 3, p. 66.) Second, "the Act contains no language that expressly excludes [defendant] from the Act's remedial treatment" or "demonstrates any intent to exclude individuals" like him. Third, given that parole and probation "serve the similar purpose of rehabilitation," an interpretation of the Act that "allows probation to be suspended or revoked for commission of [an NDPO] . . . while parole cannot be suspended or revoked for a parolee under identical circumstances would be . . . absurd." In short, defendant argues that "in light of the Act's purpose and the entire statutory scheme the failure of the Act's drafters to expressly include language indicating that probation may not be 'suspended or revoked' for a probationer in defendant's position was an oversight."

■ Like the Court of Appeal, we reject defendant's arguments. As is evident from the preceding discussion, in asserting that he is entitled to

mandatory probation under the Act, defendant does not rely on proposed construction of assertedly ambiguous statutory language. Rather, he asks that we simply add a provision to the Act that brings him within its scope. However, as we have often explained, "insert[ing]" additional language into a statute "violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] This rule has been codified in California as [Code of Civil Procedure] section 1858, which provides that a court must not 'insert what has been omitted' from a statute." (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].)

■ It is true, of course, that we occasionally have used the concept of drafters' error in applying statutes. However, we "do[] not lightly assume drafting error . . . ." (*People v. Robles* (2000) 23 Cal.4th 1106, 1114 [99 Cal.Rptr.2d 120, 5 P.3d 176].) "Consistent with the separation of powers doctrine (Cal. Const., art. III, § 3), we have previously limited ourselves to relatively minor rewriting of statutes and, even then, only resorted to that drastic tool of construction when it has been obvious that a word or number had been erroneously used or omitted. [Citations.]" (*People v. Garcia* (1999) 21 Cal.4th 1, 14 [87 Cal.Rptr.2d 114, 980 P.2d 829] (*Garcia*).)[2] Although we may partially rewrite a statute "when compelled by necessity and supported by firm evidence of the drafters' true intent [citation], we should not do so when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them." (*Id.*, at p. 6.) We follow this restrained approach to conform to the "necessary limitations on our proper role in statutory interpretation." (*Id.*, at p. 14.)

For several reasons, the statutory revision defendant proposes is not one we may properly make to correct drafters' error. First, by adopting the proposed revision, we would not be engaging in only "relatively minor rewriting of" the Act. (*Garcia, supra*, 21 Cal.4th at p. 14.) Instead, we would be adding an entirely new provision that would greatly expand the Act's scope. As previously explained, insofar as probationers are concerned, the Act applies by its terms to only two categories of probationers: (1) those who were already "on probation at the effective date of th[e] [A]ct for a nonviolent drug possession offense" (§ 1210.1, subd. (e)(3)(D), (E)); and (2) those who "receive[] probation under subdivision (a)" of section 1210.1 (§ 1210.1, subd. (e)(3)(A), (B)) for "a nonviolent drug possession offense." (§ 1210.1, subd. (a).) Defendant would have us add a third category: those who receive probation for *any* offense (except perhaps a serious felony as defined by

---

[2] "We speak here only of rewriting to correct drafting or clerical errors. A different set of considerations and limitations governs the reformation of statutes to preserve their constitutionality. [Citation.]" (*Garcia, supra*, 21 Cal.4th at p. 15, fn. 9.)

section 1192.5 or a violent felony as defined by section 667.5). Clearly, this change would represent a major expansion of the Act.

■ Second, we find no "firm evidence" that the drafters intended to include this very large category of probationers within the Act's scope, but through oversight simply neglected to do so. (*Garcia, supra*, 21 Cal.4th at p. 6.) Defendant's observation that the Act "contains no language that expressly excludes [probationers like] him from the Act's remedial treatment" hardly constitutes firm evidence of such an intent. (See *ibid.*) Moreover, defendant's argument in this regard ignores the fact that the Act includes a provision that expressly addresses probationers and, as previously noted, limits the Act's application to those who, when the Act took effect, were on probation "for a nonviolent drug possession offense" (§ 1210.1, subd. (e)(3)(D), (E)), and those who receive probation "under subdivision (a)" of section 1210.1 for an NDPO. (§ 1210.1, subd. (e)(3)(A), (B).) Under governing principles of statutory construction, "the expression of one thing in a statute ordinarily implies the exclusion of other things. [Citation.]" (*In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].) Thus, the Act's express inclusion only of probationers who are on probation for NDPO's implies the drafters' intent to exclude probationers who, like defendant, are on probation for non-NDPO's. Moreover, adopting defendant's proposed statutory revision would violate the principle of statutory construction that "requires us, if possible, to give effect and significance to every word and phrase of a statute. [Citation.]" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) By making the Act applicable to all probationers (except perhaps those convicted of a serious or violent felony as defined by sections 667.5 and 1192.5), defendant's construction would render nugatory the statutory language that makes the Act applicable to those who, when the Act took effect, were on probation "for a nonviolent drug possession offense" (§ 1210.1, subd. (e)(3)(D), (E)), and those who receive probation "under subdivision (a)" of section 1210.1 for an NDPO. (§ 1210.1, subd. (e)(3)(A), (B).)

Nor do we find firm evidence supporting defendant's view either in the ballot materials for Proposition 36 or in section 3 of the Act. The latter is an uncodified section that "declare[s]" the voters' "purpose and intent in enacting" the Act. (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) text of Prop. 36, § 3, p. 66 (Ballot Pamphlet), reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004) foll. § 1210, p. 640.) As we recently explained, the statements of purpose and intent in this "uncodified section . . . properly may be utilized as an aid in construing" the Act, but they "do not confer power, determine rights, or enlarge the scope of [the] measure." (*Canty, supra*, 32 Cal.4th at p. 1280.) Defendant's argument is directly contrary to this statement; it invokes section 3 to "enlarge the scope of" the Act. (*Canty, supra*, 32 Cal.4th at p. 1280.)

In any event, the extent to which section 3 supports defendant's position is arguable at best. Defendant stresses section 3's statement of the voters' intent to divert from incarceration "probationers . . . charged with simple drug possession or drug use offenses." (Ballot Pamp., *supra*, text of Prop. 36, § 3, subd. (a), p. 66, reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004) foll. § 1210, p. 640.) He argues that "[t]his language *suggests* the intent to include [him] within the Act." (Italics added.) However, in the case before us, although defendant violated his probation by possessing and using drugs, he was charged with, convicted of, and on probation for inflicting corporal injury on a cohabitant and battery on a police officer. He thus does not appear to qualify as a probationer charged with simple drug possession or use. Any contrary "suggest[ion]" defendant finds in the cited statement of intent does not constitute firm evidence in support of his position. For the same reason, we find unpersuasive defendant's reliance on the voters' stated intent "[t]o halt the wasteful expenditure of [money] . . . on the incarceration . . . of nonviolent drug users . . . ." (*Id.*, Prop. 36, § 3, subd. (b), p. 66, reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004) foll. § 1210, p. 640.) Again, it seems unlikely—and arguable at best—that defendant, who in this case was convicted of inflicting corporal injury on a cohabitant and battering a police officer, constitutes the kind of "nonviolent drug user[]" the voters had in mind. (*Ibid.*) Also unavailing is defendant's reliance on the voters' declared general intent "[t]o enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (*Id.*, Prop. 36, § 3, subd. (c), p. 66, reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004) foll. § 1210, p. 640.) That these general goals might arguably be furthered in some way by defendant's inclusion within the Act does not provide firm evidence that the drafters intended, but through oversight failed, to extend the Act's probation requirement to the very large category of probationers to which defendant belongs.[3]

The ballot materials for Proposition 36 also fail to contain firm evidence in support of this conclusion. Defendant asserts that extending the Act to offenders who, like him, are "on probation for a felony that is neither serious

---

[3] For example, notwithstanding section 3's reference to "drug-related crime" (Ballot Pamp., *supra*, text of Prop. 36, § 3, subd. (c), p. 66, reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code, *supra*, foll. § 1210, p. 640), the voters made the Act's mandatory probation provision expressly inapplicable to "[a]ny defendant who, in addition to one or more [NDPO's], has been convicted in the same proceeding of . . . any felony." (§ 1210.1, subd. (b)(2).) Thus, although defendant stresses the fact that he was under the influence of methamphetamine and phenylcyclidine when he beat up his girlfriend, had he been convicted of using those drugs at the same time he was convicted of the inflicting corporal injury, the Act's probation requirement expressly would not have applied to him.

nor violent" would be "in accord with" the statement in the ballot arguments that offenders "previously convicted of violent or serious felonies . . . will not be eligible for [mandatory probation under the Act] . . . unless they've served their time and have committed no felony crimes for five years." (Ballot Pamp., *supra*, argument in favor of Prop. 36, p. 26.) However, this statement only discussed one category of offender excluded from the Act: those convicted of an NDPO who have prior convictions for serious or violent felonies. Other statements in the same paragraph explained that the Act "is strictly limited," that it "only affects those guilty of simple drug possession," and that offenders are also excluded if "they're convicted of selling drugs" or they are "convicted of a non-drug crime along with drug possession." (*Ibid.*) Thus, viewed in context, the statement defendant cites does not support the negative inference he asks us to draw: that the voters intended to exclude only those offenders with a prior conviction of a violent or serious felony within the meaning of sections 667.5 or 1192.7. In short, we find no firm evidence that the drafters intended, but through oversight failed, to extend the Act's mandatory probation provision to all those placed on probation for a crime other than a serious or violent felony listed in sections 667.5 or 1192.7.

██ Finally, we disagree with defendant that it would be "absurd" to interpret the Act as written, i.e., to "allow[] probation to be suspended or revoked for commission of [an NDPO] . . . while parole cannot be suspended or revoked for a parolee under identical circumstances." Under California law, a period of parole, which is mandatory from the offender's perspective, is *not* part of the offender's prison term; it follows the prison term, which ends on the day of release on parole. (*People v. Jefferson* (1999) 21 Cal.4th 86, 95–96 [86 Cal.Rptr.2d 893, 980 P.2d 441]; *People v. Bravo* (1987) 43 Cal.3d 600, 608 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*); see also § 3000.) Thus, by definition, a parolee who commits an NDPO while on parole has already served the full prison term prescribed by law for the underlying non-NDPO and the criminal conduct that produced it. In essence, where a non-NDPO conviction renders the offender ineligible for mandatory probation under the Act and a prison term is imposed, completion of the prison term and release on parole end that ineligibility.[4] By contrast, a period of probation, which is voluntary from the offender's perspective, offers the offender an "opportunity to avoid service of a state prison term." (*Bravo, supra*, 43 Cal.3d at p. 608.) By definition, " 'probation' means the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." (§ 1203, subd. (a).) Thus, a period of probation operates as a substitute for, or "in lieu of," the prison term prescribed by law for the underlying conviction and the criminal conduct that produced it. (*Bravo,*

---

[4] Additional requirements apply if the underlying conviction was for one of the serious or violent offenses listed in sections 667.5 or 1192.7. (§ 1210.1, subd. (b)(1).)

*supra*, 43 Cal.3d at p. 609.) If offenders sentenced to prison for non-NDPO's must complete their prison terms in order to end their ineligibility for mandatory probation under the Act, then it is not absurd to require offenders placed on probation for non-NDPO's to complete their probation periods—which substitute for the prison terms they otherwise would have to serve for their underlying convictions—in order to end their ineligibility for mandatory probation under the Act.

For the reasons stated above, we reject defendant's argument that the drafters' failure to make the Act's mandatory probation and treatment provision applicable to probationers like defendant was an oversight that we may correct by rewriting the Act to apply to him.

## II. *Defendant's Exclusion Does Not Violate Equal Protection.*

As noted above, after finding that under the statutory language, the Act's mandatory probation provision does not apply to defendant, the Court of Appeal held that this omission violates defendant's right of equal protection under the federal and state Constitutions. (See U.S. Const. 14th Amend.; Cal. Const., art. I, § 7.) In reaching its conclusion, the court first found that "with respect to the purposes of the Act probationers [like defendant] are similarly situated" to parolees who commit NDPO's after being imprisoned for non-NDPO's. It next found that the classification established by the Act's disparate treatment of these groups is subject to strict scrutiny because it "affects defendant's fundamental interest in liberty." Finding no compelling state interest to justify the classification, the court then declared the Act unconstitutional insofar as it affords different treatment to these similarly situated individuals.

"Broadly stated, equal protection of the laws means 'that no person or class of persons shall be denied the same protection of the laws [that] is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness.' [Citation.]" (*People v. Wutzke* (2002) 28 Cal.4th 923, 943 [123 Cal.Rptr.2d 447, 51 P.3d 310].) It does not mean, however, that " 'things . . . different in fact or opinion [must] be treated in law as though they were the same.' [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 530, fn. 1 [159 Cal.Rptr. 317, 601 P.2d 549].) "[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different." (*In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201].) Thus, as previously noted, a threshold requirement of any meritorious equal protection claim "is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal

manner. [Citation.]" (*In re Eric J., supra,* 25 Cal.3d at p. 530.) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) Under these principles, to establish an equal protection violation, defendant must make a threshold showing that, with respect to the Act's legitimate purposes, he is similarly situated to a parolee who commits an NDPO while on parole after completing a prison term for a non-NDPO conviction.

 Unlike the Court of Appeal, we find that defendant cannot make this threshold showing. In concluding that defendant and a hypothetical parolee convicted of the same non-NDPO's are similarly situated with respect to the Act's purpose, the Court of Appeal declared that purpose to be "saving money by ending wasteful spending on incarcerating nonviolent drug offenders" and "enhanc[ing] public health and safety by diverting these offenders to drug treatment." However, as we recently explained, the Act's purpose is to require such diversion not for all offenders who commit an NDPO, but for only "those offenders whose illegal conduct *is confined to*" committing an NDPO. (*Canty, supra,* 32 Cal.4th at p. 1275, italics added.) This purpose is reflected in the provisions that make the Act's probation requirement applicable to those "convicted of a nonviolent drug possession offense" (§ 1210.1, subd. (a)), those who "receive[] probation under subdivision (a)" of section 1210.1 for an NDPO (§ 1210.1, subd. (e)(3)(A), (B)), and those "on probation at the effective date of [the Act] for a nonviolent drug possession offense." (§ 1210.1, subd. (e)(3)(D), (E).) It is also reflected in the provisions of the Act that make the probation requirement expressly inapplicable to those who "ha[ve] been convicted in the same proceeding of" an NDPO and "a misdemeanor not related to the use of drugs or any felony" (§ 1210.1, subd. (b)(2)), and to those who, after receiving probation for an NDPO, "violate[] that probation . . . by being arrested for an offense that is not a nonviolent drug possession offense." (§ 1210.1, subd. (e)(2).) Finally, this purpose is reflected in the ballot arguments for Proposition 36, which stressed that the Act "is strictly limited" in that it "only affects those guilty of simple drug possession." (Ballot Pamp., *supra,* argument in favor of Prop. 36, p. 26.) Thus, by committing and being convicted of certain non-NDPO's, offenders render themselves "ineligible" for mandatory probation under the Act. (*Canty, supra,* 32 Cal.4th at p. 1273, italics omitted.)

 However, the provisions of the Act also demonstrate the voters' intent not to render offenders convicted of non-NDPO's *permanently* ineligible for the Act's probation requirement. For most such offenders, ineligibility ends upon parole release after a period of imprisonment. (§ 3063.1, subd. (a).) For those previously convicted of one of the serious or violent offenses listed in section 667.5 and 1192.7, ineligibility ends only if they have

been released from "prison custody" *and* the new NDPO "occur[s] after a period of five years in which [they] remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than [an NDPO], or (B) a misdemeanor conviction involving physical injury or the threat of physical injury to another person." (§ 1210.1, subd. (b)(1).) As summarized by the ballot argument for Proposition 36, offenders "convicted of violent or serious felonies . . . [are] not . . . eligible for the [Act's mandatory probation and] treatment program unless they've served their time and have committed no felony crimes for five years." (Ballot Pamp., *supra*, argument in favor of Prop. 36, p. 26.)

■ Based on this understanding of the Act, we find that with respect to the Act's legitimate purposes, probationers on probation for non-NDPO's are not similarly situated to parolees on parole for the same crimes. It is true that for purposes of determining their initial eligibility for mandatory probation under the Act, such probationers and parolees are similarly situated; both have committed and been convicted of a non-NDPO that rendered them ineligible for such mandatory probation. However, for purposes of *ending* their ineligibility, they are not similarly situated. As previously explained, parolees have had sentence imposed and have completed the prison terms prescribed by law for their non-NDPO. In other words, they have "served their time" in prison for the non-NDPO's. (Ballot Pamp., *supra*, argument in favor of Prop. 36, p. 26.) Probationers have not; as explained above, they have had imposition or execution of sentence suspended and have been given an opportunity to avoid serving their time in prison by completing a period of conditional release in the community in lieu of the prison terms prescribed by law for their underlying convictions. (§ 1203, subd. (a); *Bravo, supra*, 43 Cal.3d at pp. 608–609.) Moreover, probationers who are still on probation have not completed the period of conditional release that substitutes for the prison terms they otherwise would be serving. For these reasons, we find that with respect to the Act's legitimate purposes as discussed above, a probationer like defendant, who commits an NDPO while still on probation for a non-NDPO, is not similarly situated to a parolee who commits an NDPO after *completing* a prison term for the non-NDPO. Defendant's equal protection claim therefore fails.[5]

---

[5] Given our conclusion that defendant cannot make the threshold showing necessary to establish his equal protection claim, we do not address the other aspects of that claim. The analysis that supports our conclusion also casts doubt on defendant's summary assertion that "because the disparity" of treatment between parolees and probationers "serves no rational purpose," the Act also "violates [his] due process rights." However, we do not reach the merits of the due process issue because it is not fairly included in the issue raised in the People's petition for review and defendant did not file an answer to the petition. (See Cal. Rules of Court, rule 28.2(b).)

## CONCLUSION

For the reasons stated above, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.