Filed 3/30/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>GEORGE SCOTT HUGGINS, JR.,<br><br>      Defendant and Appellant. | A139104<br><br>(Alameda County<br>Super. Ct. No. 166845B) |

The California Penal Code requires corroboration for the testimony of an accomplice (Pen. Code, § 1111)[1] and an in-custody informant (§ 1111.5). In the published portion of this opinion we address a question of first impression: may an accomplice and in-custody informant corroborate each other? We conclude they may. In the unpublished portion of the opinion, we correct certain sentencing errors and otherwise affirm.

BACKGROUND

We recite only the facts relevant to this appeal. In June 2010, appellant George Scott Huggins, Jr. and his then-girlfriend Althea Housley robbed Ivan Gomez and Margarita Bermudez in Oakland. Appellant shot Gomez during the robbery. The following month, in Oakland, appellant and Housley robbed Hai Huang and Jinghong

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

[1] All undesignated section references are to the Penal Code.

1

Kang. During the robbery, appellant shot Kang in the chest and killed him. Appellant received $10, a Chase card, and a GPS system from the second robbery.

Housley was initially charged as a codefendant in this case. Prior to trial, she entered into a plea agreement providing a reduced sentence in exchange for her testimony at appellant's trial. Housley testified that she and appellant committed the two robberies described above and that appellant shot Gomez and Kang.

Larry Houser testified for the prosecution in exchange for a reduced sentence for an unrelated crime. Houser met appellant before the robberies. Houser never met or spoke with Housley. After appellant's arrest, he and Houser, who was also in custody at that time, were placed in adjacent cells. Appellant and Houser spoke through a vent and through their cell doors. Appellant told Houser that he shot a "Mexican" man and a "Chinese" man while robbing them with his girlfriend; the crimes occurred in Oakland on different days; he shot the Chinese man in the chest; the Chinese man died; and appellant got $10 during the robbery of the Chinese man.

The prosecution presented surveillance video footage from the vicinity of the July robbery showing two individuals walking up a street right before the attack and the same individuals running in the opposite direction right after the shooting. The pair in the video were identified by Huang as the robbers who had shot Kang, and by a close friend of Housley's as Housley and appellant. The prosecution also presented evidence that Housley's fingerprint was found at the scene of the July robbery and that casings found at the scene of the two robberies were fired from the same weapon.

Appellant was convicted of one count of murder (Pen. Code, § 187, subd. (a); count 1), one count of attempted second degree robbery (§§ 211, 664; count 2), and two counts of second degree robbery (§ 211; counts 3 & 4). Allegations that appellant personally and intentionally discharged a firearm and caused great bodily injury or death were found true as to all counts, and the special circumstance that the murder was committed during a robbery was found true as to the murder count.

2

I. *Accomplice and In-Custody Informant Testimony Corroboration*

Appellant requested, and the trial court refused, an instruction that an accomplice and an in-custody informant cannot corroborate each other's testimony. Appellant contends the trial court erred. We disagree.

Section 1111 provides, in relevant part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." "[O]ne accomplice may not corroborate another." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1132 (*Rodrigues*).)

In 2011, the Legislature enacted section 1111.5, which provides: "(a) A jury or judge may not convict a defendant, find a special circumstance true, or use a fact in aggravation based on the uncorroborated testimony of an in-custody informant. The testimony of an in-custody informant shall be corroborated by other evidence that connects the defendant with the commission of the offense, the special circumstance, or the evidence offered in aggravation to which the in-custody informant testifies. Corroboration is not sufficient if it merely shows the commission of the offense or the special circumstance or the circumstance in aggravation. Corroboration of an in-custody informant shall not be provided by the testimony of another in-custody informant unless the party calling the in-custody informant as a witness establishes by a preponderance of the evidence that the in-custody informant has not communicated with another in-custody informant on the subject of the testimony. [¶] (b) As used in this section, 'in-custody informant' means a person, other than a codefendant, percipient witness, accomplice, or coconspirator, whose testimony is based on statements allegedly made by the defendant while both the defendant and the informant were held within a city or county jail, state penal institution, or correctional institution. Nothing in this section limits or changes the requirements for corroboration of accomplice testimony pursuant to Section 1111."

3

Appellant does not dispute that the plain language of the statutes does not prohibit an in-custody informant and an accomplice from corroborating each other's testimony. He points, however, to the last sentence of section 1111.5 and argues that the reference to section 1111 coupled with the prohibition of an accomplice's testimony being corroborated by another accomplice "leads to the conclusion" that an accomplice and an in-custody informant cannot corroborate each other's testimony. We disagree.

Section 1111.5 explicitly provides that its terms do not "limit[] or change[]" the accomplice testimony corroboration requirements. Before the enactment of section 1111.5, *People v. Williams* (1997) 16 Cal.4th 153, 201, 246 (*Williams I*) approved the use of testimony by an in-custody informant to corroborate the testimony of an accomplice. Further, we note appellant does not argue that in-custody informants could not corroborate accomplice testimony prior to the enactment of section 1111.5. Therefore, section 1111.5 by its own terms preserved the ability of an in-custody informant to corroborate an accomplice's testimony.

In addition, section 1111.5 should not be read to preclude an accomplice from corroborating an in-custody informant's testimony. The Legislature could have easily included such a prohibition when enacting section 1111.5. That the Legislature prohibited corroboration by another in-custody informant except under certain circumstances, but declined to prohibit corroboration by an accomplice, strongly suggests the Legislature did not intend to prohibit the latter. (*People v. Guzman* (2005) 35 Cal.4th 577, 588 ["Under governing principles of statutory construction, 'the expression of one thing in a statute ordinarily implies the exclusion of other things.' "].)

To the extent that appellant urges us to impose a judicially created rule that accomplices and in-custody informants cannot corroborate each other's testimony because both are self-interested, we decline to do so. Appellant argues such a rule is akin to the judicially created rule that an accomplice's testimony cannot be corroborated by another accomplice. However, " '[g]enerally, "doubts about the credibility of [an] in-court witness should be left for the jury's resolution." ' " (*People v. Hovarter* (2008) 44 Cal.4th 983, 996 (*Hovarter*).) Moreover, as noted above, our Supreme Court implicitly

4

rejected appellant's argument prior to the enactment of section 1111.5 by finding an in-custody informant could corroborate an accomplice's testimony. (*Williams I, supra,* 16 Cal.4th at pp. 201, 246.) Finally, while section 1111 is silent with respect to any limits on permissible corroborating witnesses, section 1111.5 precisely defines those witnesses who may not corroborate an in-custody informant's testimony. Appellant has provided no authority for us to impose a rule precluding accomplices and in-custody informants from corroborating each other's testimony. (Cf. *Hovarter, supra,* at p. 996 ["no rule of evidence authorized the trial court to exclude [an in-custody informant's] testimony merely because his character was reprehensible and he had a motive to lie"].) The trial court's decision to deny the requested corroboration instruction was correct.

II. *Circumstantial Evidence Jury Instruction*

Appellant next argues the trial court erred by refusing to instruct the jury on circumstantial evidence pursuant to CALCRIM No. 224 and instead instructing the jury pursuant to CALCRIM No. 225. We disagree.

CALCRIM No. 224 instructs a jury, in relevant part, that "before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." CALCRIM No. 225 has the same substantive language but limits its application to a jury's finding that the defendant had the required intent or mental state.

" 'CALCRIM Nos. 224 and 225 provide essentially the same information on how the jury should consider circumstantial evidence, but CALCRIM No. 224 is more inclusive.' " (*People v. Contreras* (2010) 184 Cal.App.4th 587, 592 (*Contreras*).) "CALCRIM No. 224 'is the proper instruction to give unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state.' " (*Ibid.*)

"The trial court is required to give [CALCRIM No. 224] on its own motion when the prosecution relies substantially on circumstantial evidence to prove guilt." (*People v. McKinnon* (2011) 52 Cal.4th 610, 676 (*McKinnon*).)[2] A prosecution's case substantially relies on circumstantial evidence when "direct evidence was a small part of the prosecution's case [citation] or the defendant's guilt is to be inferred from a pattern of incriminating circumstances." (*People v. Williams* (1984) 162 Cal.App.3d 869, 875 (*Williams II*).) CALCRIM No. 224 "need not be given when circumstantial evidence is merely incidental to and corroborative of direct evidence, due to the 'danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime.' " (*McKinnon, supra,* at p. 676.)

We disagree with appellant's contention that the prosecution relied significantly on circumstantial evidence to prove he was the perpetrator. Appellant does not dispute that the testimony of Housley and Houser constituted direct, not circumstantial, evidence. (*Williams II, supra,* 162 Cal.App.3d at pp. 875–876 [circumstantial evidence instruction not required where prosecution's case centered on accomplice testimony]; *People v. Wiley* (1976) 18 Cal.3d 162, 174 ["Extrajudicial admissions, although hearsay, are not the type of indirect evidence as to which the instructions on circumstantial evidence are applicable."].) The prosecution's case substantially relied on their testimony, as well as the direct evidence provided by the victims' testimony. During closing arguments the prosecutor confirmed this, informing the jury that "the key evidence in this case is all direct evidence," identifying the testimony of Housley and Houser as well as the victims and a bystander witness to the July robbery.

The circumstantial evidence in this case—including the surveillance video footage and fingerprint and ballistics analysis—was "merely incidental to and corroborative of

---

[2] Although some of the cases we rely on discuss former CALJIC Nos. 2.01 and 2.02, "CALCRIM No. 224 corresponds to former CALJIC No. 2.01 and CALCRIM No. 225 corresponds to former CALJIC No. 2.02. Case law addressing CALJIC instructions is still generally applicable to the corresponding CALCRIM instruction." (*Contreras, supra,* 184 Cal.App.4th at p. 591, fn. 4.)

direct evidence," so CALCRIM No. 224 was not required. (*McKinnon, supra,* 52 Cal.4th at p. 676.) That Housley's and Houser's testimony required corroboration does not alter this outcome because, as discussed above, the corroboration was provided by direct evidence—the other's testimony. Even if the jury relied on circumstantial evidence for the requisite corroboration, CALCRIM No. 224 was not required because "the prosecution is substantially relying on the accomplice's [and in-custody informant's] testimony and the corroborative evidence is only needed to substantiate the accomplice's [and in-custody informant's] testimony and overcome the distrust with which the accomplice's and [in-custody informant's] testimony is viewed." (*Williams II, supra,* 162 Cal.App.3d at pp. 875–876 [holding circumstantial evidence instruction not required].)

Appellant also argues CALCRIM No. 225 was not appropriate because mental state was proved by direct evidence, not circumstantial evidence. Assuming without deciding appellant is correct, he has failed to explain how any error was prejudicial. (Cf. *Rodrigues, supra,* 8 Cal.4th at p. 1142 ["Because the trial court delivered the more inclusive instruction under [CALCRIM No. 224], its refusal to additionally instruct with [CALCRIM No. 225] clearly was not prejudicial error."].)[3]

III. *Sentencing Issues*

A. *Determinate Terms*

The trial court sentenced appellant to prison for life without the possibility of parole on the murder count. The court sentenced appellant to consecutive determinate terms of the midterm of two years for the attempted robbery count and the midterm of three years for each of the robbery counts. On each count, the trial court imposed an additional consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)).

---

[3] Because we find the sole possible trial error harmless, we reject appellant's argument that cumulative error prejudiced his right to due process and a fair trial.

7

The parties agree that two of the three determinate terms should have been imposed at one-third the middle term. (§ 1170.1, subd. (a); *People v. Sanders* (2010) 189 Cal.App.4th 543, 558 ["an indeterminate enhancement does not merge with the determinate offense to make the entire term encompassed by the indeterminate sentencing law"]; *People v. Neely* (2009) 176 Cal.App.4th 787, 798 [where a case includes determinate sentence crimes and indeterminate sentence crimes, "[n]othing in the sentencing for the determinate term crimes is affected by the sentence for the indeterminate term crime"].) The parties further agree we should designate count 3 as the principal term and modify the base sentences in counts 2 and 4 at one-third of the middle term. We will modify the judgment accordingly.

B. *Conduct Credits*

The trial court awarded appellant 157 days of conduct credit. The People contend this award was in error. We may consider this argument even though the People did not appeal. (*People v. Francisco* (1994) 22 Cal.App.4th 1180, 1193 [erroneous conduct credit award is "in the nature of an unauthorized sentence" and therefore "may be corrected whenever it is brought to the attention of a court"].)

"Section 2933.2, which took effect in June of 1998, bars conduct credits for murderers." (*People v. McNamee* (2002) 96 Cal.App.4th 66, 69.) "[S]ection 2933.2 applies to the offender not to the offense and so limits a murderer's conduct credits irrespective of whether or not all his or her offenses were murder." (*People v. Wheeler* (2003) 105 Cal.App.4th 1423, 1432.) Appellant does not dispute or otherwise respond to this argument in his reply brief. We agree with the People and will modify the judgment accordingly.

C. *Parole Revocation Fine*

The trial court imposed and suspended a parole revocation restitution fine pursuant to section 1202.45. Appellant contends this fine was not permissible because he was sentenced to life without the possibility of parole.

Where a defendant is sentenced to a determinate prison term under section 1170, the trial court is required by statute to impose a parole revocation fine. (*People v.*

8

*Brasure* (2008) 42 Cal.4th 1037, 1075; see § 3000, subd. (a)(1) ["A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 shall include a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article."]; § 1202.45, subd. (a) ["In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall . . . assess a[] . . . parole revocation restitution fine"].) This statutory obligation is not altered even if other aspects of the sentence render the defendant "unlikely ever to serve any part of the parole period on his determinate sentence." (*Brasure, supra,* at p. 1075.) The imposition of the fine was proper.

## DISPOSITION

The judgment is modified to (1) reflect the base term for count 2 is eight months; (2) reflect the base term for count 4 is one year; and (3) delete the award of 157 days of presentence conduct credits. As so modified, the judgment is affirmed. The trial court is ordered to prepare and forward to the California Department of Corrections and Rehabilitation an abstract of judgment modified accordingly.

_____
SIMONS, J.

We concur.


_____
JONES, P.J.


_____
BRUINIERS, J.

9

Superior Court of Alameda County, No. 166845B, Hon. Jon Rolefson, Judge.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Jeffrey M. Laurence and Victoria Ratnikova, Deputy Attorneys General, for Plaintiff and Respondent.