Filed 6/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re EMANUEL O. CUENCA<br><br>on Habeas Corpus. | A164317<br><br>(Napa County Super. Ct.<br>Nos. CR183992, 20CR002592) |

While he was on probation, a jury convicted Emanuel Cuenca of assault. (Pen. Code,[1] § 240.) Upon a finding that Cuenca was in violation of his probation for prior resisting arrest and false imprisonment convictions, the court revoked probation and sentenced him to a single aggregate term of imprisonment totaling five years, two months in county jail for all three felony offenses. By petition for writ of habeas corpus, Cuenca now argues that Napa County's failure to grant county jail inmates the same opportunities that state prison inmates have to earn rehabilitation program credits violates his constitutional right to equal protection. We disagree and will affirm.

## I. BACKGROUND

In 2018, Cuenca pleaded guilty in case number CR183992 to false imprisonment (§ 236) of his girlfriend, S.C., and to a related charge of resisting arrest resulting in serious bodily injury to an officer (§ 148.10, subd. (a)). At sentencing, the court imposed a split sentence consisting of

---

[1] All undesignated statutory references are to the Penal Code.

three years of formal probation plus county jail time that amounted to a single day, net of credit for time served.

Two years later, while on probation, Cuenca was charged in case number 20CR002592 with assault (§ 245, subd. (a)(4)) and criminal threats (§ 422) arising out of a physical altercation between him and a male friend, M.O. A jury found Cuenca guilty of a lesser offense of assault (§ 240). The trial court revoked probation and sentenced Cuenca to county jail for an aggregate term running a total of five years and two months for the three felony convictions in both cases. Cuenca pursued consolidated appeals under *People v. Wende* (1979) 25 Cal.3d 436, and we today affirm the convictions and sentence.[2]

Together with his *Wende* appeals, Cuenca filed an original petition for a writ of habeas corpus in this court, arguing that the unavailability of rehabilitation programming credits in county jail violates the equal protection guarantees of the state and federal constitutions. "Napa County Department of Corrections chooses to award only those [programming] credits required by statute," he argues. And "[s]ince state prison inmates have a statutory right to receive credit for programming, petitioner's constitutional right to equal protection . . . is being violated because he and other county prison inmates are being treated differently for no plausible purpose."

We took preliminary briefing from Cuenca and from Napa County, and then issued an order to show cause on the petition. Napa County filed a

---

[2] We grant Cuenca's request that we take judicial notice of the records in his *Wende* appeals (Evid. Code, § 452, subd. (d)) to the extent those records are probative of his history of prior convictions, predating the revocation of his parole.

formal return; Cuenca filed a traverse; and the cause is now before us for decision.

## II. DISCUSSION

### A. *Statutory and Regulatory Framework*

The trial court sentenced Cuenca to county jail pursuant to section 1170, subdivision (h), which provides that most felonies, with certain exceptions, are punishable by imprisonment in a county jail rather than state prison. (§ 1170, subd. (h)(1) and (2).) Defendants convicted of violent felonies, serious felonies, felonies that qualify for sentence enhancements, or felonies requiring registration as a sex offender (§ 1170, subd. (h)(3)), are generally sentenced to state prison under this statute.

Cuenca's habeas petition draws attention to a disparity in the treatment of state prison inmates and county jail prisoners. Both state prison and county jail inmates may receive credits for work performance and good behavior. (See §§ 2931 and 2933 [credits for good behavior and worktime for state prison inmates], 4019, subds. (b) and (c) [work performance and good time credits for county jail inmates].) But state prison inmates may receive additional "program credit reductions" for "successfully complet[ing] specific program performance objectives for approved rehabilitative programming." (§ 2933.05, subd. (a).)[3]

Comparable credits for rehabilitative programming are not available to county jail prisoners in Napa County. "[A] sheriff or county director of corrections *may* . . . award an inmate program credit reductions from his or

_____

[3] The California Department of Corrections and Rehabilitation (CDCR) has promulgated regulations applicable to state prison inmates that allow them to receive credit for participating in approved rehabilitative programs through Milestone Completion Credit (Cal. Code Regs., tit. 15, § 3043.3), Rehabilitative Achievement Credit (*id.*, § 3043.4), and Educational Merit Credit (*id.*, § 3043.5). (See *id.*, § 3043(a).)

her term of confinement as provided in this section." (§ 4019.4, subd. (a)(1), italics added.) While the CDCR *must* promulgate regulations that provide for credit reductions for state prison inmates who successfully complete specific program performance objectives (see § 2933.05, subd. (a)), a county sheriff is not required to promulgate similar regulations, but instead may "elect[]" to participate in a program credit reduction program. (§ 4019.4, subd. (a)(1).) Napa County has elected not to do so.

Napa County acknowledges that, as a matter of discretion, it "has chosen not to offer . . . Program Credits" to inmates because it "does not currently have the resources available to provide the contemplated rehabilitation programs, because there is no physical space available in the jail for use as a classroom or meeting room," and because there is no "source of dedicated funding for such programs for inmates in custody." According to Cuenca, his inability to earn the same type of program credit reductions that state prison inmates may earn violates his right to equal protection under the California and federal Constitutions. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)

## B. *Equal Protection Principles*

" 'Broadly stated, equal protection of the laws means "that no person or class of persons shall be denied the same protection of the laws [that] is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness." [Citation.]' " (*People v. Guzman* (2005) 35 Cal.4th 577, 591.)

To prevail on his equal protection claim, Cuenca must show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner for purposes of the law challenged. (*People v. Guzman*, *supra*, 35 Cal.4th at pp. 591–592.) If the groups are found to be similarly

4

situated but treated in an unequal manner, " 'we apply different levels of scrutiny to different types of classifications.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) " 'At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations.] Classifications based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.' " (*Ibid.*)

We are not dealing with a suspect class or a fundamental right. Cuenca's access to early release on a date earlier than full service of his term of imprisonment is not a right but a privilege. Presumably that is why he concedes, and we agree, that the differential treatment he attacks is subject to rational basis review. This concession dooms his equal protection claim. At the threshold, we do not agree that the two groups of inmates involved here are similarly situated, but more fundamentally, we see nothing on this record to persuade us Napa County's discretionary decision to opt out of rehabilitative credit programming fails to pass muster when examined under the minimal scrutiny of rational basis review.

### C. *Inmates in Local Prisons Are Not Similarly Situated to Inmates in State Prisons and in Any Event the County Has a Rational Basis for Not Offering Cuenca Program Credits*

Cuenca presses his equal protection argument against the backdrop of the Criminal Justice Realignment Act of 2011 (Realignment Act), which states that "Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in improved public safety. [¶] . . . [¶] . . . Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex

5

offenses to locally run community-based corrections programs . . . will improve public safety outcomes among adult felons and facilitate their reintegration back into society." (§ 17.5, subd. (a)(3) & (5), as added by Stats. 2011, ch. 15, § 229.) Under this scheme, as a default, low-level felony offenders sentenced to imprisonment serve their sentences in local facilities such as county jail or county prison (§ 1170, subd. (h)(1) & (2)), subject to three specified exclusions (§ 1170, subd. (h)(3)) requiring placement in state prison for (1) serious or violent crimes (§§ 1192.7, subd. (c), 667.5, subd. (c)) or out-of-state equivalents to serious or violent crimes, (2) registrable past or current sex crimes (§ 290), or (3) any felony imposed with an enhancement for aggravated theft (§ 186.11). (See Couzens et al., Sentencing California Crimes (The Rutter Group 2021) §§ 11:1-4.)

Though Cuenca has an extensive record of felony convictions and an unsuccessful probation history, he was sentenced to county jail as a low-level offender. According to him, the only difference between individuals like him and those in state prisons is in the location. Cuenca contends that these two groups are similarly situated for purposes of section 1170 subdivision (h), and that the denial of programming credits to county jail inmates violates the equal protection clause. In effect, he argues it is unconstitutional for Napa County to exercise its discretion under section 4019.4, subdivision (a)(1) by opting out of participation in credit reduction programming. The premise of this argument is unremarkable; Napa County concedes that state prison inmates and county jail inmates are being treated differently under section 1170 subdivision (h). For two reasons, however, that differential treatment does not violate Cuenca's equal protection rights, either as a matter of facial analysis of section 1170 subdivision (h) by its terms, or on an

6

as-applied basis focusing on the county's exercise of discretion under section 4019.4, subdivision (a)(1).

First, state prison inmates and county jail inmates are not similarly situated for purposes of section 1170 subdivision (h). Cuenca's argument to the contrary overlooks a number of differences between these two groups, the most significant of which is that inmates sentenced to state prison present a higher public safety risk. The Realignment Act specifically differentiates these two groups for the purpose of improving "public safety outcomes among adult felons" and facilitating "their reintegration back into society." (§ 17.5, subd. (a)(5).) As Napa County states, "the Realignment Act differentiates crimes based on their magnitude or severity" and the purpose was to " ' "realign" the treatment of certain low-level . . . felony . . . offenders' into county correctional programs." The Legislature explicitly excluded non-low-level offenders convicted of serious, violent, or sex offenses from being designated into local prisons. (§ 1170, subd. (h)(3).) Based on the express language in the Realignment Act, we conclude that, on the face of the statute, the two groups at issue here cannot be treated as similarly situated for purposes of section 1170, subdivision (h).

Second, even if we were to conclude that the two groups of inmates Cuenca focuses upon were similarly situated for purposes of section 1170, subdivision (h), his equal protection claim would still fall short. Under the highly deferential rational basis standard of review that applies here, the statutory classification he attacks must be upheld if it is supported by any conceivable legitimate state purpose. (*People v. Chatman* (2018) 4 Cal.5th 277, 289 ["A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable."].) There is such a purpose here. In a world where

7

the resources necessary to deliver programming to all imprisoned inmates statewide must be rationed, and where the state does not control how counties allocate resources devoted to local jails, it seems rational to us that the Legislature could have concluded that programming ought to be made available first to inmates under its direct control, in state prison, since they pose the greatest public safety risk upon their eventual reentry into society.

Cuenca argues that giving counties the discretion to withhold such programing opportunities results in arbitrary treatment as between state and county inmates. He points out, "[f]or example, although defendants sentenced to state prison have been convicted of a serious, violent, or sex offense, their period of confinement is not necessarily significantly longer than those defendants sentenced to county prison: A defendant convicted of second-degree robbery serves a two-, three-, or five-year sentence; a defendant convicted of first-degree burglary serves a two-, four-, or six-year sentence; a defendant convicted of dissuading a witness serves a two-, three-, or four-year sentence; and a defendant convicted of arson or criminal threats serves a 16-month, two-, or three-year sentence." "Here," we are told, "[Cuenca] was convicted of two felonies, a violation of Penal Code sections 148.10, subdivision (a) (resisting arrest resulting in serious bodily injury of an officer) and 236 (false imprisonment of S.C.). . . . A violation of Penal Code section 148.10 has a sentencing triad of two, three, or four years; and a violation of Penal Code section 236 has a sentencing triad of 16 months, two or three years." According to Cuenca, "These sentences are equivalent, if not longer than, most of the serious felonies and only slightly shorter than the two violent felonies listed above." And "[s]ince a county prison inmate like [Cuenca] could benefit from rehabilitative programming to address the causes of his criminal behavior," it is argued, "the failure to award credits to

8

those inmates willing to participate in rehabilitative efforts makes no rational sense."

We do not agree. Triad sentencing ranges are not the sole measure of public safety risk. Nor are they the most pertinent measure of risk in this case. It appears to us that the Legislature used section 1170, subdivision (h)(3) exclusions to local jail placement as a proxy for the severity of certain crimes and hence the dangerousness of the offenders involved. Arguably, inmates who must be sentenced to state prison under section 1170, subdivision (h)(3)—and who thus pose the greatest public safety risk upon eventual release—have the greatest need for credit programming. It is certainly logical that, as a result, the Legislature chose to make access to programming credit mandatory for state prisoners while treating county jail inmates differently. We are prepared to grant that Cuenca's conviction record, in its totality, makes him someone whose criminal profile is comparable to many state prison inmates. But that makes no difference to the equal protection analysis. The line drawn by the Legislature in section 1170, subdivision (h)(3) need not have been perfectly calibrated; and it may have left without access to programming services some county inmates who have the same or even greater need for such services than those in state prison; but as a first-order approximation, it would have been rational to give counties complete discretion about whether to offer programing, while giving no such discretion to the CDCR.

The dispositive consideration here is that, if such a rationale were the basis of the differential treatment at issue, it would have been foreseeable that a particular county might opt out of credit programing for fiscal reasons, as Napa County did. We see nothing arbitrary about that. In his traverse, Cuenca insists that "without evidence of how Napa County has allocated its

9

portion of" state-provided Realignment Act funding "for the purpose of incarcerating, supervising, and rehabilitating felons in their custody, there is no rational basis for the disparate treatment of county jail inmates." But he fails to take into account how rational basis review works. Napa County need not put forward evidence of the actual reasons justifying its policy choice. Because the challenged classification is presumed to be rational, any conceivable reason will do. (*People v. Chatman*, *supra*, 4 Cal.5th at p. 289.) That minimal burden is easily met here.

When we undertake equal protection analysis, we have no warrant to respond to every complaint of unfairness from anyone who may have a claim to have been treated less favorably than others in broadly comparable circumstances at the hands of the state. It is precisely because of the importance of the equal protection guarantee in our constitutional scheme that we reserve intensive scrutiny for disparities of utmost gravity. What we have here—a claim that, if sustained, would essentially call upon us to micromanage budget choices made by Napa County—is not in that category. In the absence of any argument that we are dealing with a suspect class, that fundamental rights are at stake, or that Cuenca has been treated arbitrarily, his complaint boils down to nothing more than a policy argument better directed to the Legislature or to the Napa County Board of Supervisors than to us.

## III. DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

STREETER, Acting P. J.

WE CONCUR:

BROWN, J.
NADLER, J.*

---

\* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:  Superior Court of California, County of Napa

Trial Judge:  Hon. Scott R.L. Young

Counsel:      Law Offices of Heather E. Shallenberger and
            Heather E. Shallenberger, by appointment of the Court of
            Appeal under the First District Appellate Project,
            for Petitioner.

            Thomas C. Zeleny, Interim Napa County Counsel,
            Sherri S. Kaiser, Chief Deputy County Counsel,
            Jason M. Dooley and Douglas V. Parker, Deputy County
            Counsel, for Respondent.