Filed 11/17/23  P. v. Lara CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>WILFREDO LARA,<br><br>    Defendant and Appellant. | F086043<br><br>(Super. Ct. No. VCF290489)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]       Before Poochigian, Acting P. J., Detjen, J. and Meehan, J.

## INTRODUCTION

In 2013, appellant and defendant Wilfredo Lara (defendant) was convicted of two counts of attempted voluntary manslaughter with firearm enhancements, and sentenced to an aggregate term of 23 years in prison.

In 2023, the trial court denied defendant's Penal Code[1] section 1172.6 petition and found he was ineligible for resentencing because attempted voluntary manslaughter was not within the applicable statute.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Defendant submitted a supplemental brief. We will address his contentions, review the record of conviction, and affirm the trial court's denial of his petition.

## FACTS[2]

"[A]round 7:30 [p.m.] on the evening of October 24, 2013, Oscar Madrigal was driving on a surface street when a van pulled alongside his car on the passenger side. The

---

[1]    All further statutory citations are to the Penal Code.

[2]    After notice to the parties and without objection, we have taken judicial notice of this court's records and the nonpublished opinion that affirmed defendant's convictions in *People v. Lara* (Jan. 25, 2018, F074100) [nonpub.opn.].

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2002) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) We have quoted the factual statement from defendant's direct appeal to place his current arguments in context, and will not rely on that factual statement to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

2.

driver of the van, defendant, yelled at Madrigal to pull over; defendant was known to Madrigal. Madrigal ignored defendant's request and instead increased his speed. Moments later, gunshots erupted shattering the back window and windshield of Madrigal's car. A shot passed by the left ear of Madrigal's passenger, Pedro Lopez ….

"Madrigal drove home and called the Tulare County Sheriff's Department. Deputy Robert Hadley responded and took a report from Madrigal as to what had occurred. Hadley inspected Madrigal's car and saw a bullet hole in the windshield and the broken back window. There were two impact points on the rear cargo door that looked like bullet holes. One bullet was lodged in the cargo door; another bullet was lodged in the back seat; and a bullet fragment was inside the car. The bullets were nine millimeter in size.

"Madrigal told Hadley where the shooting had taken place. No shell casings, tire tracks, or any other evidence of the shooting was found at that location.

"Detective Jason Kennedy arrived at defendant's residence in response to the shooting incident. Defendant was inside, hiding under the bed. In a field identification, Madrigal identified defendant as the shooter. Defendant was placed under arrest.

"Kennedy transported defendant to the station house, where he conducted gunshot residue testing on defendant's hands. Multiple particles consistent with gunshot residue were found on defendant's right hand; a few such particles were found on his left hand. Defendant was advised of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 and indicated he understood his rights and was willing to answer questions. Defendant denied shooting at Madrigal's car; he claimed his friend Astul had his van during the time of the shooting.

"A search warrant for defendant's van was obtained. In searching the van, Kennedy found three nine-millimeter casings.

"While in jail awaiting trial, defendant made two calls to his wife. In the first call, defendant said he had nothing to do with the shooting, but his wife should give Madrigal

3.

$500. Defendant claimed Madrigal was trying to extort money from him. In the second call, defendant told his wife to talk to 'Sosa,' 'Jose Luis,' and 'Tala' and tell them 'I'm going to need them as witnesses.' Defendant stated his wife should 'explain' to the three that Madrigal 'was inside all day when he came out upset and hit the car' and the three are 'going to do me that favor.'

"Lopez testified he and Madrigal were driving from Orosi to Dinuba when another vehicle drew close, some words were said, and gunshots were fired. At one point, the other vehicle had pulled alongside Madrigal's car and Lopez saw the driver. The driver of the other vehicle was defendant. Lopez ducked down when he heard the first gunshot; there were multiple shots fired. The vehicle driven by defendant was directly behind Madrigal's car when the shots were fired.

"Defendant denied shooting at Madrigal's car. He claimed he was at his mother's house when the shooting took place. His mother and other people were present. Defendant's friend, Augustine Sosa Lopez (Sosa Lopez), arrived and told him Madrigal wanted to speak with him. Defendant testified he and Sosa Lopez went to Madrigal's apartment; defendant and Madrigal argued. Defendant left and went back to his mother's house.

"Sosa Lopez testified that he and defendant went to Madrigal's residence; Madrigal and defendant argued. Defendant left, leaving Sosa Lopez at Madrigal's house. A few minutes later, Sosa Lopez heard gunshots, went outside, and saw broken windows and broken glass on Madrigal's car.

"Defendant's mother testified defendant arrived at her house around 4:00 p.m. the day of the shooting. He then left about 30 minutes later and returned after an hour. He stayed at her house until around 7:00 [p.m.] or 7:30 p.m."

## PROCEDURAL BACKGROUND

On April 11, 2014, an information was filed in the Superior Court of Tulare County charging defendant with counts 1 and 2, premeditated attempted murder

4.

(§§ 664/187, subd. (a)), counts 3 and 4, assault with a deadly weapon, a firearm (§ 245, subd. (a)(2)), and count 5, shooting a firearm at an occupied vehicle (§ 246), with firearm enhancements and prior conviction allegations.

On February 29, 2016, defendant's jury trial began.

**The Jury Instructions**

The jury was instructed with CALCRIM No. 600 on the elements of counts 1 and 2, attempted murder, that the defendant took at least one direct but ineffective step toward killing another person, and he intended to kill that person.

CALCRIM No. 603 defined the lesser included offenses of attempted voluntary manslaughter: "An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion." The instruction further stated that the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if he took at least one direct but ineffective step toward killing a person; the defendant intended to kill that person; the defendant attempted the killing because he was provoked; the provocation would have caused an ordinary person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment; and the attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment.

The jury was not instructed on the felony-murder rule, the natural and probable consequences doctrine, principals and accomplices, aiding and abetting, conspiracy, or any theory of imputed malice.

**Verdicts and Sentence**

On March 3, 2016, the jury found defendant not guilty of counts 1 and 2, premeditated attempted murder. As to both counts, however, he was convicted of the lesser included offenses of attempted voluntary manslaughter (§§ 664/192, subd. (a)), and that he personally used a firearm (§12022.5, subd. (a)). He was convicted of counts 3−5,

with the attached section 12022.5, subdivision (a) firearm enhancements found true. The prior conviction allegations were also found true.

On June 2, 2016, defendant was sentenced to an aggregate term of 23 years, based on the upper term of eight years for count 3, and consecutive terms of 10 years for the firearm enhancement and five years for the prior serious felony enhancement. The trial court imposed concurrent terms or stayed the sentences for the remaining convictions and enhancements.

**Direct Appeal**

This court affirmed defendant's convictions on direct appeal, and corrected sentencing errors where enhancements were stayed instead of stricken. We declined defendant's request to remand the matter for resentencing on the firearm enhancements because it was "inconceivable" the trial court would strike those enhancements "considering defendant's record and the trial court's sentencing rationale." (*People v. Lara*, *supra*, F074100.)

## PETITION FOR RESENTENCING

On February 7, 2023, defendant filed a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel.

Defendant filed a supporting declaration that consisted of a preprinted form where he checked boxes that he was eligible for resentencing because (1) a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be

convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The court appointed counsel to represent defendant.

**The People's Opposition**

On February 24, 2023, the prosecution filed opposition and argued defendant was statutorily ineligible for resentencing because his convictions for attempted voluntary manslaughter were not within the provisions of section 1172.6.

**The Trial Court's Denial of the Petition**

On March 16, 2023, the trial court held a hearing on defendant's petition, and gave a tentative ruling that he was ineligible for resentencing because attempted voluntary manslaughter was not an enumerated conviction. Defense counsel disagreed and argued Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775) addressed homicide and manslaughter "in general," and did not differentiate between first and second degree murders, and voluntary and involuntary manslaughter. The court disagreed and found Senate Bill 775 expressly addressed attempted murder but not attempted manslaughter, and denied the petition.

On April 4, 2023, defendant filed a timely notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief also included counsel's declaration that defendant was advised he could file his own brief with this court. In response to this court's order, defendant filed a supplemental brief raising the following issues.

**A. Attempted Voluntary Manslaughter**

Defendant argues he was eligible for resentencing under section 1172.6 because the crimes of attempted murder and attempted voluntary manslaughter "are virtually the same," and the matter must be remanded for an evidentiary hearing.

7.

Former section 1170.95 was enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.), effective January 1, 2019.  (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, *supra*, 11 Cal.5th 952, 959.)  The initial version of the statute provided for "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill No. 1437."  (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill 775 made substantive amendments to former section 1170.95 that " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' "  (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)  On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes.  (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction that allows the court "to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose:  to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process."  (*Lewis*, *supra*, 11 Cal.5th at pp. 971–972, fn. 6.)

While defendant was charged with two counts of premediated attempted murder, he did not accept a plea bargain and instead went to trial, where the jury found him not guilty of those charges and instead convicted him of two counts of attempted voluntary manslaughter as lesser included offenses.  At the hearing on his petition for resentencing,

the trial court correctly found that, as a matter of law, defendant was not eligible for resentencing because the amendments enacted by Senate Bill 775 limited resentencing to petitioners convicted after trial of murder, attempted murder, and manslaughter based on theories of imputed malice, and the Legislature did not include attempted manslaughter within those provisions.

" '[I]nsert[ing]' additional language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.' " (*People v. Guzman* (2005) 35 Cal.4th 577, 587.)  "Where, as here, the Legislature makes express statutory distinctions, 'we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended.  …  [W]e presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language.' " (*People v. Connor* (2004) 115 Cal.App.4th 669, 691.)

## B.  The Jury Instructions

Even if defendant's convictions for attempted voluntary manslaughter are within the provisions of section 1172.6, defendant is still ineligible for resentencing.  The record of conviction includes the jury instructions.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599; *People v. Harden* (2022) 81 Cal.App.5th 45, 50, 54−55.)  As set forth above, the jury was not instructed on any theories of imputed malice as to either the charged offenses of attempted murder or the lesser included offenses and convictions for attempted voluntary manslaughter.

## C.  Ineffective Assistance

To the extent defendant argues appellate counsel was prejudicially ineffective because he filed a *Delgadillo/Wende* brief and failed to raise the attempted voluntary manslaughter issue in this appeal, an appellate attorney does not commit ineffective assistance by filing a *Wende* brief since "the appellate court … review[s] the entire record to determine whether there is any arguable issue." (*People v. Kelly* (2006) 40 Cal.4th

9.

106, 118.) *Delgadillo* held that "[w]hen appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*People v. Delgadillo*, *supra*, 14 Cal.5th at pp. 231−232.) "If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues. [Citations.] … While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Id*. at p. 232.)

In this appeal, defendant responded to this court's *Delgadillo* order and filed a letter brief. We have addressed the issues raised in his letter brief and, in an abundance of caution, exercised our discretion to conduct our own independent review of the record. There are no arguable issues, defendant was ineligible for resentencing as a matter of law, and his attorney was not ineffective for failing to raise meritless arguments. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

## DISPOSITION

The court's order of March 16, 2023, denying defendant's section 1172.6 petition for resentencing, is affirmed.